Derwood STEWART, Petitioner,

Rhonda Stewart, d/b/a Stewart's Nursery, a/k/a Stewart's Farm, Stewart's Farm & Nursery, The Derwood Stewart Family, and Stewart's Nursery Farm Stables, Petitioner,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

No. 01–4204.

United States Court of Appeals, Sixth Circuit.

May 15, 2003.

Before NELSON and COLE, Circuit Judges, and ROSEN, District Judge.*

## OPINION

COLE, Circuit Judge.

Petitioner Derwood Stewart petitions this Court for review of a decision of the Secretary of the United States Department of Agriculture ("USDA") finding that he violated the Horse Protection Act ("HPA"), 15 U.S.C. §§ 1821–31, when he entered his horse in a horse show while "sore."

For the reasons that follow, we DENY Stewart's petition for review.

## I. BACKGROUND

The HPA was enacted to prohibit the practice of deliberately inflicting pain on a horse to reproduce the high-stepping gait of a champion Tennessee Walking Horse. *See Baird v. United States Dep't of Agric.,* 39 F.3d 131, 132 n. 1 (6th Cir.1994). Sor-

ing occurs when an injury to or sensitization of a horse's legs, rather than training or breeding, is used to induce the desired gait. *Rowland v. United States Dep't of Agric.,* 43 F.3d 1112, 1113 (6th Cir.1995). A horse is presumed to be sore if it exhibits abnormal sensitivity in both of its forelimbs or both of its hindlimbs. 15 U.S.C. § 1825(d)(5). Managers of horse shows appoint Designated Qualified Persons ("DQPs") to inspect horses for compliance with the HPA. 15 U.S.C. § 1823; 9 C.F.R. §§ 11.1, 11.7. The showing, exhibiting, or entering into a show of any sore horse is prohibited by the HPA. 15 U.S.C. § 1824(2).

In 1988, Stewart owned seven Tennessee Walking Horses, including one named "JFK's O My Jackie O" ("Jackie O"). Stewart's horses were boarded with and trained by Don Milligan. At that time, Jessie Smith was working for Milligan as a horse trainer. In mid–1998, Stewart moved his horses to his own barn and hired Smith to train them. Stewart instructed Smith not to abuse his horses "in any shape, form, or fashion."

In late October 1998, Jackie O was entered in the 30th Annual National Walking Horse Trainers Show ("the Show") in Shelbyville, Tennessee. On October 28, 1998, as part of the pre-exhibition inspection, Jackie O was found to be sore. Stewart was not present at the examination of Jackie O. When Stewart learned that Jackie O had been found to be sore, he fired Smith.

The Administrator of the Animal and Plant Health Inspection Service ("APHIS"), an agency of the USDA, filed a complaint charging Stewart, his daughter Rhonda Stewart, and the additional respondents (together, the "family busi-

---

ness"), with violating the HPA. Following an administrative hearing, the Chief Administrative Law Judge ("ALJ") dismissed the complaints against Rhonda Stewart and the family business, but determined that Stewart violated the HPA and assessed a $2,000 penalty against him. Both Stewart and the USDA appealed the decision to the Secretary, and a Judicial Officer to whom the Secretary delegated authority over the case generally adopted the ALJ's decision, but modified the decision to increase the penalty to $2,200 and to disqualify Stewart from showing horses for one year. Stewart now appeals that decision.

## II. ANALYSIS

### A. Violation of § 1824(2)(B)

Our review of an administrative decision regarding the HPA is limited to a determination of whether proper legal standards were used and whether substantial evidence exists to support the decision. *Bobo v. United States Dep't of Agric.*, 52 F.3d 1406, 1410 (6th Cir.1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, means more than a scintilla of evidence but less than a preponderance, and must be based on the record taken as a whole. *Id.*

Section 5(2)(A) of the HPA prohibits any person from showing or exhibiting, in any horse show or exhibition, any horse which is sore. *See* 15 U.S.C. § 1824(2)(A). Section 5(2)(B) prohibits any person from entering for the purpose of showing or exhibiting, in any horse show or exhibition, any horse which is sore. *See* 15 U.S.C. § 1824(2)(B). Section 5(2)(C) prohibits any person from selling, auctioning, or offering for sale, in any horse sale or auction, any horse which is sore. *See* 15 U.S.C. § 1824(2)(C). Section 5(2)(D) prohibits any horse owner from allowing an-

other person to do one of the acts prohibited in sections 5(2)(A), 5(2)(B), and 5(2)(C). *See* 15 U.S.C. § 1824(2)(D). The amended complaint filed by the USDA alleged that Stewart violated section 5(2)(B) by entering a sore horse, and that Rhonda Stewart and the family business violated 5(2)(D) by allowing the entry of a sore horse. The ALJ found that Stewart violated section 5(2)(B), and dismissed the complaints against Rhonda Stewart and the family business.

■ Stewart argues that he is not liable under section 5(2)(B) because Jackie O was entered into the show by Smith, and Stewart therefore did not enter a sore horse. Stewart contends that, for purposes of the HPA, "entry" has been held to encompass all requirements, including inspection and time necessary to complete these requirements. In support of this proposition, Stewart cites *Elliott v. Administrator, Animal and Plant Health Inspection Service*, 990 F.2d 140, 145 (8th Cir.1993). As the Judicial Officer noted, however, nothing in *Elliott* requires that all steps or any particular step in the process of entry must be personally completed by the owner of the horse, rather than by the trainer, in order to conclude that the owner entered the horse. Indeed, requiring an individual to have personally performed every step of the entry process in order to qualify as having entered the horse for HPA purposes would result in the untenable holding that if two individuals divide the entry responsibilities, both are able to escape liability under section 5(2)(B).

■ In the present case, the Judicial Officer found, and the evidence in the record demonstrated, that Stewart decided to exhibit Jackie O at the Show, paid the entry fee to enter Jackie O, and provided the means to transport Jackie O there. Thus, substantial evidence existed to sup-

port the claim that Stewart entered Jackie O in the Show. Additionally, Stewart does not contest the finding that Jackie O was sore. Accordingly, we do not find error in the Judicial Officer's determination that Stewart entered Jackie O in the Show while sore.

Stewart also argues that this Court's decision in *Baird* requires a finding that he has no liability due to the fact that he was unaware that the horse was sore. Such a finding, Stewart contends, would result in a strict liability standard, which this Court held in *Baird* should not be imposed. The alleged violation in *Baird*, however, was of section 5(2)(D), where the owner allowed his horse to be entered in a show and was unaware that the horse was sore, but did not himself enter the horse. *See Baird*, 39 F.3d at 132. Here, the Judicial Officer found Stewart liable, not for allowing the entry of Jackie O, but for actually entering Jackie O, and the Judicial Officer was therefore correct in finding *Baird* to be inapposite.

### B. Timeliness of USDA's Appeal to the Secretary

■ Stewart also argues that the Judicial Officer erred in failing to dismiss the USDA's appeal as untimely. The administrative regulations governing these proceedings state that a party may file an appeal of the ALJ's decision within thirty days after receiving service of the decision. 7 C.F.R. § 1.145(a). The ALJ's decision was filed with the hearing clerk on May 31, 2001. On June 28, 2001, the USDA requested an extension of time for filing an appeal. The Judicial Officer granted this request, extending the time for filing until

July 20, 2001. The USDA again requested an extension of time for filing an appeal on July 20, 2001, by leaving a voicemail at the Office of the Judicial Officer before 4:30 p.m., the time at which the hearing clerk's office closes. The request for an extension of time was granted on July 23, 2001, extending the time in which the appeal could be filed until July 23, 2001. The USDA's appeal was then filed on this date.

We review a federal agency's interpretation of an administrative regulation for an abuse of discretion. *See Oakland County Bd. of Comm'rs v. United States Dep't of Labor*, 853 F.2d 439, 442 (6th Cir.1988). In this case, the find that the Judicial Officer did not abuse his discretion in granting the extensions of time to the USDA, or in finding that the appeal by the USDA was timely filed.

### C. One–Year Period of Disqualification

■ Lastly, Stewart contends that there was not substantial evidence to support the Judicial Officer's decision to impose a one-year disqualification period.[1] "Determination of a sanction to be applied by an administrative agency, if within the bounds of its lawful authority, is subject to very limited judicial review." *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984). This Court must only determine whether the Judicial Officer's decision was "unwarranted in law" or "without justification in fact." *Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182, 186, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973). The period of disqualification imposed is authorized by 15 U.S.C. § 1825(c) and warranted by Stewart's violation of 15 U.S.C. § 1824(2)(B). Accordingly, the decision to

1. The Judicial Officer not only imposed a one-year period of disqualification which had not been imposed by the ALJ, but also increased the fine from $2,000 to $2,200, pursuant to the Federal Civil Penalties Inflation Adjust-

ment Act. 28 U.S.C. § 2461. While Stewart appeals the decision to impose the one-year disqualification, he does not appeal the increase in the monetary penalty.

impose the one-year disqualification period was proper.

## III. CONCLUSION

For the foregoing reasons, we DENY Stewart's petition for review.