*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0396p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HERBERT DERICKSON and JILL DERICKSON,

*Petitioners,*

*v.*

No. 07-4158

UNITED STATES DEPARTMENT OF AGRICULTURE
et al.,

*Respondents.*

---

On Petition for Review of an Order of the Secretary
of the United States Department of Agriculture.
No. 04-0003.

Argued: September 18, 2008

Decided and Filed: November 10, 2008

Before: MOORE and COOK, Circuit Judges; HOOD, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Mike R. Wall, Oxford, Mississippi, for Petitioners. Andrew R. Varcoe, UNITED STATES DEPARTMENT OF AGRICULTURE, Washington, D.C., for Respondents. **ON BRIEF:** Mike R. Wall, Oxford, Mississippi, for Petitioners. Andrew R. Varcoe, UNITED STATES DEPARTMENT OF AGRICULTURE, Washington, D.C., for Respondents.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Petitioners Herbert Derickson ("H. Derickson") and Jill Derickson ("J. Derickson") (referred to jointly as "the Dericksons") petition this court for review of the decision of the Secretary of Agriculture that they violated 15 U.S.C. §§ 1824(1) and 1824(2)(B), the Horse Protection Act of 1970 ("Act"), by transporting and entering in a horse show

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

a sore[1] horse, Just American Magic.  The Dericksons make three arguments:  (1) the Judicial Officer ("JO") did not have substantial evidence to find that the Dericksons transported Just American Magic in violation of the Act; (2) the JO did not have substantial evidence to find that J. Derickson entered Just American Magic in a horse show in violation of the Act; and (3) H. Derickson cannot be sanctioned by respondents, the Animal and Plant Health Inspection Service of the United States Department of Agriculture ("APHIS"), because H. Derickson has already served an "appropriate" penalty for his violations of the Act issued by the National Horse Show Commission ("NHSC") pursuant to the APHIS Horse Protection Operating Plan ("Operating Plan").

For the reasons discussed below, we **DENY** the Dericksons' petition for review.

## I.  FACTS AND PROCEDURE

On March 21, 2002, H. Derickson presented a horse, Just American Magic,[2] for preshow inspection at the Thirty-Fourth Annual National Walking Horse Trainers Show ("Trainers Show"). Upon inspection, two Designated Qualified Persons ("DQPs") determined that Just American Magic was sore because he had bilateral scarring and did not comply with the Scar Rule.[3]  The DQPs disqualified Just American Magic from showing.  Two veterinary medical officers employed by the Department of Agriculture later confirmed the DQPs' finding.

J. Derickson admits that she signed a check to pay Just American Magic's entry fee for the show, drawn on the Herbert Derickson Training Facility account.  Dericksons Br. at 6, 22.  The Dericksons also assert that, prior to March 21, 2002, APHIS and NHSC executed a written agreement, the Operating Plan, which was in effect during the Trainers Show.  *Id.* at 24-25.  The Operating Plan outlined penalties for violations of the Act that a private organization could impose on violators.  It is undisputed that NHSC issued a two-year suspension (effective dates December 16, 2002 to December 15, 2004) and a $700 fine to H. Derickson for the bilateral soring violation, H. Derickson's second such violation.[4]  This sanction was consistent with those authorized for such violations in the Operating Plan.

On August 19, 2004, Kevin Shea, Administrator of APHIS, filed a complaint against the Dericksons, alleging that the Dericksons violated §§ 1824(1) and 1824(2)(B) of the Act by: (1) "transporting 'Just American Magic' to the . . . Trainers Show in Shelbyville, Tennessee, while the horse was sore, . . . with reason to believe that the horse, while sore, may be entered for the purpose of its being shown in that horse show" and (2) entering Just American Magic in said show while sore.  Joint Appendix ("J.A.") at 72-73 (APHIS Compl. ¶¶ 11-12).  Several others, including Robert Raymond Black, II ("Black"), were named in the complaint.[5]

---

[1] "A 'sore' horse is a horse on which chemicals or other implements have been used on its front feet to make the horse highly sensitive to pain" causing the horse "to lift its feet quickly, reproducing the distinctive, high-stepping gait that show judges look for in Tennessee Walking Horses." *McConnell v. United States Dep't of Agric.*, 198 F. App'x 417, 418 (6th Cir. 2006) (unpublished opinion).

[2] H. Derickson is not the owner of the horse; Just American Magic is owned by Robbie Warley and Black Gold Farm, Inc.

[3] The Scar Rule provides that a horse is deemed sore if that horse suffers from certain physical conditions indicative of soring. *See Rowland v. United States Dep't of Agric.*, 43 F.3d 1112, 1115 (6th Cir. 1995).

[4] NHSC issued an eight-month suspension and a $600 fine to H. Derickson for a bilateral soring violation involving Just American Magic that occurred less than one year prior to the Trainers Show incident.

[5] The Dericksons are the only parties named in the complaint that are before this court.

In their answer, both H. Derickson and J. Derickson admitted that they were "at all material times herein," individuals "doing business as Herbert Derickson Training Facility, aka Herbert Derickson Stables, aka Herbert Derickson Breeding and Training Facility." J.A. at 75-76 (Ans. ¶¶ 5-6). Both denied all other allegations.

The administrative law judge ("ALJ") held a hearing on June 26 and 27, 2006, at which time Steven Fuller ("Fuller"), senior investigator with the Department of Agriculture, testified that he completed several portions of APHIS Form 7077 ("Form 7077"), the disqualification form for Just American Magic from the Trainers Show. Two such portions were items 11 and 27. Fuller further testified that he obtained the information to fill out Form 7077 from Black. Item 27 asks "NAME AND ADDRESS OF PERSON(S) RESPONSIBLE FOR TRANSPORTATION" and is answered "same as # 11." J.A. at 167 (Form 7077). Item 11 is answered in pertinent part "Robert Raymond Black, II." *Id.*

Black and his wife were the only witnesses for the Dericksons. During Black's testimony, APHIS stipulated that Black "was employed by Herbert Derickson." J.A. at 359 (Hr'g Tr. at 468). When asked who he understood was the owner of the business that employed him, Black testified, "I understood it to be Herbert Derickson." J.A. at 360 (Hr'g Tr. at 469).

On October 3, 2006, the ALJ found that H. Derickson violated the Act by entering a sore horse. For the entering violation, the ALJ issued a $2,200 fine and a two-year disqualification from "showing, exhibiting, or entering any horse, directly or indirectly," J.A. at 26 (ALJ Dec. at 15), but then suspended one year of the disqualification, giving H. Derickson "partial credit for the suspension imposed by" NHSC. *Id.* The ALJ dismissed all allegations against J. Derickson and the transportation allegation against all respondents, finding that the evidence regarding transportation was "scant, with the entry in item 27 of APHIS Form 7077 being the primary evidence introduced in support of the allegations." J.A. at 17 (ALJ Dec. at 6) (internal reference omitted).

H. Derickson and APHIS cross-appealed to the JO designated as the final decision maker by the Secretary of the Department of Agriculture. The JO found that the Dericksons violated the Act by entering and transporting Just American Magic while sore. First, the JO rejected H. Derickson's argument that the Operating Plan limited the ability of APHIS to impose legal sanctions against H. Derickson, stating that: (1) no signature page was attached to the copy of the plan entered into evidence that would show that the Operating Plan applied to the Trainers Show and (2) even if the Operating Plan applied, the terms of the Operating Plan do not limit the authority of APHIS to enforce the Act. To support the latter finding, the JO highlighted five specific passages in the Operating Plan:

> Nothing in this Operating Plan is intended to indicate that APHIS has relinquished any of its authority under the Act or Regulations.

> It is not the purpose or intent of this Operating Plan to limit in any way the Secretary's authority. It should be clearly understood that the Secretary has the ultimate administrative authority in the interpretation and enforcement of the Act and the Regulations. This authority can only be curtailed or removed by an act of Congress, and not by this Plan.

> The Department retains the authority to initiate enforcement proceedings against any violator when it feels such action is necessary to fulfill the purposes of the [Act].

> Nothing in this section is intended to limit APHIS's disciplinary authority under the Act and the Regulations.

APHIS has the inherent authority to pursue a federal case whenever it determines the purposes of the [Act] have not been fulfilled.

J.A. at 37 (JO Dec. at 10) (internal references omitted).

The JO next concluded—based upon admissions made in the Dericksons' initial answer and several business invoices on Herbert Derickson Training Facility letterhead signed "Thank you, we appreciate your business!" and "Thanks, Herbert and Jill Derickson," J.A. at 298-99 (Business Invoices)—that the Dericksons were running a partnership known as Herbert Derickson Training Facility, aka Herbert Derickson Stables, aka Herbert Derickson Breeding and Training Facilities.

Then, the JO found that Herbert Derickson Stables was responsible for transporting Just American Magic to the Trainers Show. He based this finding on invoice # 945, sent from Herbert Derickson Stables to the owners of Just American Magic, noting "no charge" for the "Hauling/Show Prep/Stall" item. J.A. at 303 (Invoice #945). The JO "interpret[ed the invoice] to indicate that Herbert Derickson Stables transported Just American Magic to the . . . Trainers Show." J.A. at 53 (JO Dec. at 26). The JO concluded that the Dericksons, as partners of the business, were liable for transporting Just American Magic.[6]

The JO also found that the Dericksons entered Just American Magic in violation of the Act. In regards to J. Derickson, the JO found that she paid the entry fee and filled out the entry form. To support his entry-form finding, the JO stated:

> [a]lthough the signature block on the entry blank states "Herbert Derickson," the writing is similar in style to Jill Derickson's signature on the entry payment check, an entry payment check for the 2003 National Walking Horse Trainers Show, and an entry blank for the 2003 National Walking Horse Trainers Show. The signature on the entry blank for the 2002 National Walking Horse Trainers Show is very different from Mr. Derickson's signature as seen on other documents in the record . . . .

J.A. at 34 (JO Dec. at 7 n.1) (internal references omitted).

Pertinent to this appeal, the JO also found that there was insufficient evidence to hold Black liable for transporting Just American Magic. While addressing Black's liability, the JO noted that Fuller's testimony regarding Form 7077, coupled with testimony from Black and his wife, caused him to "agree with the ALJ that there are inconsistencies that raise questions about the accuracy of some information" contained in Form 7077. J.A. at 45 (JO Dec. at 18).

For the transporting and entering violations, the JO disqualified each Derickson from showing, exhibiting, or entering horses in shows for two years (one year for each violation) and issued $4,400 in sanctions to each Derickson ($2,200 for each violation). The Dericksons timely petitioned this court for review of the JO's decision.[7]

---

[6] The JO further found that Just American Magic was sore when transported. This finding is not disputed in the instant appeal.

[7] The Dericksons also filed a motion to stay enforcement of the sanctions issued pending appellate review, which was granted.

## II. ANALYSIS

### A. Standard of Review

We review a decision of the U.S. Department of Agriculture under the Act only to determine "whether the proper legal standards were employed and [whether] substantial evidence supports the decision.'" *Gray v. United States Dep't of Agric.*, 39 F.3d 670, 675 (6th Cir. 1994) (quoting *Fleming v. United States Dep't of Agric.*, 713 F.2d 179, 188 (6th Cir. 1983)). Substantial evidence is relevant evidence that "'a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 184 (6th Cir. 1986)). The record, as a whole, is considered in determining the substantiality of evidence. *McConnell v. United States Dep't of Agric.*, 198 F. App'x 417, 421 (6th Cir. 2006) (unpublished opinion). "When 'an administrative agency disagrees with the conclusions of its ALJ, the standard does not change; the ALJ's findings are simply part of the record to be weighed against other evidence supporting the agency.'" *Rowland v. United States Dep't of Agric.*, 43 F.3d 1112, 1114 (6th Cir. 1995) (quoting *Stamper v. Sec'y of Agric.*, 722 F.2d 1483, 1486 (9th Cir. 1984)).[8] We defer to the JO "in the matter of derivative inferences." *Rowland*, 43 F.3d at 1114.

The Dericksons argue that the JO did not have substantial evidence to support his findings that: (1) the Dericksons are liable for transporting Just American Magic; (2) J. Derickson is liable for entering Just American Magic;[9] and (3) the Operating Plan does not limit APHIS's ability to impose legal sanctions on H. Derickson. We address each argument in turn.

### B. Liability for Transporting Just American Magic

A person violates the Act if she transports a horse while sore, "with reason to believe that such horse while it is sore may be shown, exhibited, [or] entered for the purpose of being shown or exhibited . . . in any horse show, horse exhibition, or horse sale or auction." 15 U.S.C. § 1824(1); *see also* 15 U.S.C. § 1825(b)(1) (stating that "any person who violates section 1824 of this title shall be liable to the United States for a civil penalty"). "Person" is not defined in the Act, but 1 U.S.C. § 1 states that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] . . . the words 'person' and 'whoever' include . . . partnerships." 1 U.S.C. § 1.

The Dericksons do not dispute that Just American Magic was sore when transported, but contend only that they are not liable for the transportation. Dericksons Br. at 14-17. In concluding that the Dericksons were liable, the JO found: (1) the Dericksons were operating a partnership that went by several names, including Herbert Derickson Stables, and that they were liable for the actions taken by that partnership; and (2) Herbert Derickson Stables transported Just American Magic to the Trainers Show. We hold that both of these findings of the JO are supported by substantial evidence.

---

[8] Though the Dericksons admit that substantial evidence is the proper standard of review, they assert that the JO's decision in this matter should be viewed "'more critically than it would if the [JO] and the ALJ were in agreement.'" Dericksons Br. at 13 (quoting *Young v. United States Dep't of Agric.*, 53 F.3d 728, 732 (5th Cir. 1995)) (alteration in Dericksons Br.). This argument is meritless. *Young* is not binding on this court, and is in direct contradiction to *Rowland*. *See Rowland*, 43 F.3d at 1114. As *Rowland* is a published opinion of the Sixth Circuit, we are bound by its holding. SIXTH CIR. R. 206(c).

[9] H. Derickson does not appeal the JO's finding that he entered Just American Magic in violation of the Act.

### 1. The Dericksons' Partnership

Under Tennessee law,[10] a partnership can be implied "where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money," regardless of whether the parties intended to create a partnership. *Bass v. Bass*, 814 S.W.2d 38, 41 & n.3 (Tenn. 1991). All partners are liable for the obligations of the partnership. TENN. CODE § 61-1-306(a).[11]

Applying *Bass*, the JO found that the Dericksons were operating a partnership which went by several names, including Herbert Derickson Stables. The JO supported this finding with two pieces of evidence. First, he looked to the Dericksons' unequivocal admission that "each was an individual doing business as Herbert Derickson Training Facility, aka Herbert Derickson Stables, aka Herbert Derickson Breeding and Training Facility." J.A. at 52 (JO Dec. at 25); *see also* J.A. at 75 (Ans. at 1). This admission alone would have been substantial evidence to support a finding of implied partnership under Tennessee law. Though the Dericksons did not use the word "partnership," two individuals admitting that they are running the same business under the same name is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Gray*, 39 F.3d at 675, that the Dericksons "entered into a business relationship for profit, combining their property, labor, skill, experience, or money," *Bass*, 814 S.W.2d at 41. However, the JO further supported his finding with several invoices that include the statements "Thank you, we appreciate your business!" and "Thanks, Herbert and Jill Derickson." J.A. at 52-53 (JO Dec. at 25-26); *see also* J.A. at 283-286 (Invoices). Looking at the record as a whole, we conclude that it is clear that there is substantial evidence that the Dericksons were operating a partnership.

The Dericksons argue that H. Derickson operates as a sole proprietor and that the JO ignored evidence to that effect, specifically: (1) Black's testimony that he understood the owner of the business to be H. Derickson, not J. Derickson; (2) APHIS's stipulation that Black was an employee of H. Derickson; and (3) the lack of any testimony or documentation, including tax returns, that indicated that a partnership existed.

The Dericksons' argument fails. The evidence to which the Dericksons refer does not render insubstantial the evidence on which the JO relied. First, Black testified only that he "understood" H. Derickson to be the owner of the business that employed him. J.A. at 360 (Hr'g Tr. at 469). Just as the parties' understanding of the legal effect of their relationship is not determinative regarding whether an implied partnership exists, *Bass*, 814 S.W.2d at 41, Black's understanding of the ownership of the business that employed him is not substantial evidence of the legal effect of the Dericksons' relationship.

Second, the Dericksons mischaracterize APHIS's stipulation that Black "was employed by Herbert Derickson." J.A. at 359 (Hr'g Tr. at 468). The questions being posed to Black at the time the stipulation was made concerned his status as an employee in general. Prior to the stipulation, the nature of the business relationship between the Dericksons had not been discussed.[12] In this

---

[10] In their answer, the Dericksons state that the mailing address for their business is "Shelbyville, Tennessee." J.A. at 76 (Ans. ¶¶ 5-6). Neither party disputes that Tennessee partnership law applies in this case.

[11] The Dericksons do not dispute the JO's finding that, if they are partners of the partnership that transported Just American Magic, they are personally liable for the transportation violation.

[12] The exchange at the administrative law hearing between the various attorneys—Ms. Carroll ("Q"), Mr. Heffington, and Mr. Bobo—Judge Davenport, and Black ("A" or "THE WITNESS"), preceding the stipulation in question is as follows:

Q: Okay. And were you a full-time employee?

context, stipulating that Black was an employee of H. Derickson does not equate to stipulating that H. Derickson was operating a sole proprietorship.

Third, the statement that no documentary evidence was introduced to support a finding of partnership is inaccurate. As outlined above, several invoices and the Dericksons' own answer to the complaint were used to support the JO's finding. Moreover, the fact that no tax returns or other financial documents were introduced into evidence does not diminish the evidence that *is* in the record. The Dericksons do not dispute the accuracy of the invoices or the admissions in the answer; instead, they simply argue that we should hold that there cannot be substantial evidence of a partnership without some evidence that directly states that the parties are running a partnership. Tennessee law does not require that specific evidence. *See Bass*, 814 S.W.2d at 41 (holding that a partnership can be implied from the surrounding circumstances).

Therefore, we hold that the JO relied on substantial evidence to find that the Dericksons were operating an implied partnership that went by several names, including Herbert Derickson Stables.

## 2. Transporting Just American Magic

The Dericksons further argue that the JO lacked substantial evidence to find that they transported Just American Magic in violation of the Act. The Dericksons contend that the JO admitted in his decision that the sole evidence on this issue is APHIS Form 7077, which states that Black was responsible for transporting Just American Magic. Because this was the sole evidence, the Dericksons assert that Black alone can be held liable for transportation.

This argument mischaracterizes the opinion below and the evidence. The JO referenced Form 7077 with regard to only *Black's* liability for transportation. J.A. at 45 (JO Dec. at 18). The JO did not state that Form 7077 was the sole evidence against the Dericksons; to the contrary, the JO found invoice # 945 and its statement of "no charge" for "Hauling/Show Prep/Stall" to be evidence of the Dericksons' liability. J.A. at 52-53 (JO Dec. at 25-26). Clearly, the JO did have substantial evidence to support his finding.

The Dericksons contend, however, that the line marked "no charge" should have indicated to the JO that neither the Dericksons nor Herbert Derickson Stables were responsible for transporting Just American Magic. Essentially, the Dericksons argue that the JO incorrectly interpreted the evidence. This argument must fail. Typically, we will defer to a JO's reasonable interpretations. *Rowland*, 43 F.3d at 1114. Furthermore, the JO's interpretation in this case is supported by substantial evidence. As APHIS points out, "[i]t is a common commercial practice for sellers of goods and services to give buyers certain items without charge as an add-on to more expensive items." APHIS Br. at 45. We note that our review of the record supports the JO's interpretation of the evidence. *See* J.A. at 283-286, 290-304 (Invoices). Thus, the JO's inference

---

A:   Yes
Q:   Okay. And I assume there were—you had W-2 form [sic] that you filled out and taxes withheld and—
A:   There was [sic] taxes—
MR. BOBO:  Your Honor, I will object to relevancy here.
MR. HEFFINGTON:    Your Honor, we can stipulate that he was employed by Herbert Derickson—what was the beginning date?—October 2001.
THE WITNESS:  October 2001.
MR. HEFFINGTON:  October 2001 until when?
THE WITNESS:  February of '03.
MR. HEFFINGTON:  February of '03
JUDGE DAVENPORT:  Is that sufficient, Ms. Carroll—
MS. CARROLL:  Thank you.
J.A. at 359 (Hr'g Tr. at 468).

from the invoice entry, made in light of his experience and familiarity with horse-industry practices, is sufficient evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that Herbert Derickson Stables transported Just American Magic. *Gray*, 39 F.3d at 675.

Therefore, we hold that substantial evidence supports the JO's decision that Herbert Derickson Stables transported Just American Magic in violation of the Act and that the Dericksons, as partners of Herbert Derickson Stables, are liable for this violation.

## C. Liability for Entering Just American Magic

Section 1824(2)(B) of the Act prohibits the "entering for purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore." 15 U.S.C. § 1824(2)(B). Entering a horse "entails paying the entry fee, registering the horse, and presenting the horse for inspection." *Gray*, 39 F.3d at 676 (citing approvingly *Elliott v. Adm'r, Animal & Plant Health Inspection Serv.*, 990 F.2d 140, 145 (4th Cir. 1993)). Though there is no binding precedent in this circuit regarding what steps must be completed by an individual to subject her to liability for entering a sore horse under the Act, two panels of this court have held that an individual does not have to perform personally all the steps of entry in order to be found liable. *Stewart v. United States Dep't of Agric.*, 64 F. App'x 941, 943 (6th Cir. 2003) (unpublished opinion); *McConnell*, 198 F. App'x at 423 (holding that merely presenting a horse for inspection is entry of the horse under the Act). The *Stewart* court stressed that "requiring an individual to have personally performed every step of the entry process in order to qualify as having entered the horse for [Horse Protection Act] purposes would result in the untenable holding that if two individuals divide the entry responsibilities, both are able to escape liability." *Stewart*, 64 F. App'x at 943.

We are persuaded by the reasoning of *Stewart* and conclude that liability for entering a horse must rest with any individual who completes any one of the various steps of entry—paying the entry fee, registering the horse, or presenting the horse for inspection. Congress intended the Act to "make it impossible for persons to show sored horses in nearly all horse shows." H.R. Rep. No. 91-1597 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4870, 4872. Because entry is a multi-step process, the intent of Congress can be achieved only by a rule that provides that any individual who performs any step of entry maybe held liable for a violation. A contrary rule would easily allow trainers and owners to circumvent the Act by delegating each step of the entry process to different individuals, preventing effective enforcement. Therefore, we hold that an individual can be held liable for entering a sore horse if she performs any one of the various acts of entry.

J. Derickson argues that her only role in the entering process was to sign the check that paid Just American Magic's entry fee and that this act alone is not enough to subject her to liability. She does not contest that paying an entry fee would constitute entering a horse, but rather she claims only that she did not actually pay the fee.

This argument is not supported by the evidence. J. Derickson admitted that she signed a check drawn on the account of Herbert Derickson Training Facility. The JO found, supported by substantial evidence as outlined above, that J. Derickson is a partner of a partnership that does business as Herbert Derickson Training Facility. As a partner, she is personally liable for the actions of the partnership. Therefore, she is personally liable for paying the entry fee. Thus, we hold that the JO had substantial evidence to support his finding that J. Derickson is liable for entering Just American Magic in violation of the Act.

## D. Applicability of Operating Plan

H. Derickson argues that the Operating Plan prevents APHIS from sanctioning him for the violations that occurred at the Trainers Show. He contends that the Operating Plan is a binding contract that prevents APHIS from pursuing actions against individuals who have been sanctioned

in accordance with the Operating Plan by a private organization unless "it has been determined that the purposes of the Act are not being fulfilled" by the private sanction. Dericksons Br. at 30. H. Derickson asserts that the JO did not have substantial evidence to find that the purposes of the Act were not fulfilled by his completion of the two-year suspension issued by NHSC.**[13]**

The JO found that, even assuming the Operating Plan was a binding contract between APHIS and NHSC that applied to the Trainers Show,**[14]** the Operating Plan does not limit the ability of APHIS to pursue actions against individuals for violations previously sanctioned by private organizations. The JO cited five separate examples in the Operating Plan to support this finding:

> Nothing in this Operating Plan is intended to indicate that APHIS has relinquished *any of its authority* under the Act or Regulations.

> It is not the purpose or intent of this Operating Plan to limit in any way the Secretary's authority. It should be clearly understood that the Secretary has the ultimate administrative authority in the interpretation and enforcement of the Act and the Regulations. *This authority can only be curtailed or removed by an act of Congress,* and not by this Plan.

> The Department retains the authority to initiate enforcement proceedings *against any violator* when it feels such action is necessary to fulfill the purposes of the [Act].

> *Nothing in this section is intended to limit APHIS's disciplinary authority* under the Act and the Regulations.

> APHIS has the inherent authority to pursue a federal case *whenever it determines the purposes of the [Act] have not been fulfilled.*

J.A. at 37 (JO Dec. at 10) (internal references omitted) (emphases added).

The JO's finding is supported by substantial evidence. The terms of the Operating Plan clearly state that APHIS did not "relinquish[] any of its authority." Given the straightforward nature of the language and the frequency of the statements—five times in a twenty-seven-page document—the evidence is such that a reasonable mind would find it conclusive.

Furthermore, H. Derickson misconstrues the language in the Operating Plan that he cites to support his claim. The Operating Plan does state that APHIS "retains the authority to initiate enforcement proceedings against any violator when it feels such action is necessary to fulfill the purposes of the [Act]." J.A. at 310 (Operating Plan at 4 n.8). It also states that "APHIS has the inherent authority to pursue a federal case whenever it determines the purposes of the [Act] have not been fulfilled." J.A. at 331 (Operating Plan at 25 n.25). However, neither phrase contains language that limits the ability of APHIS to act; there is no language that suggest that APHIS can act only under these specified circumstances.

---

**[13]** The parties vigorously dispute whether H. Derickson did in fact comply with the suspension issued by NHSC. *Compare* Dericksons Br. at 25-28 *with* APHIS Br. at 25-27. Ultimately, whether H. Derickson served the NHSC suspension is irrelevant because, as explained below, the Operating Plan does not curtail the ability of APHIS to initiate an action of its own against H. Derickson.

**[14]** There is some question as to whether the Operating Plan was in effect at the time of the Trainers Show. The JO noted that the Operating Plan lacked a signature page. The copy provided to this court suffers from the same defect. However, we will assume for purposes of this opinion that the Operating Plan was in effect during the Trainers Show.

Moreover, the Dericksons' brief undermines H. Derickson's argument. The brief states that "APHIS *clearly retains the authority* under the terms contained within the Operating Plan to prosecute cases *when it feels that such action is necessary* to fulfill the purposes of the Act." Dericksons Br. at 29 (internal references and quotation marks omitted) (emphases added). This statement highlights the discretionary nature of APHIS's decision-making power. H. Derickson tries to soften this language by insisting that another phrase, found twenty-one pages later in the Operating Plan, requires that this discretion be exercised only when "it has been determined that the purposes of the Act are not being fulfilled, such as when a person on suspension by [a Horse Industry Organization] is violating the terms and/or conditions of that suspension." *Id*. at 30. However, H. Derickson does not explain why we should read these two phrases together, nor does he cite any law that would require that reading. Further, H. Derickson does not explain why, if this is the proper reading of the Operating Plan, the Operating Plan repeatedly expresses that APHIS has not relinquished any discretion in bringing actions. Considering all the language in the Operating Plan, we conclude that it is clear that the JO properly concluded that the Operating Plan does not limit APHIS's ability to bring this action.[15]

Thus, we uphold the JO's decision that the Operating Plan does not curtail APHIS's ability to sanction H. Derickson for violations of the Act pertaining to the Trainers Show.[16]

### III. CONCLUSION

Because we conclude that the JO had substantial evidence to support his findings that: (1) the Dericksons are liable for transporting Just American Magic; (2) J. Derickson is liable for entering Just American Magic; and (3) the Operating Plan does not limit APHIS's ability to impose legal sanctions on H. Derickson, we **DENY** the Dericksons' petition for review.

---

[15] For the first time at oral argument, H. Derickson, through his attorney, asserted that APHIS admitted, in a letter written in August 25, 2005, by then-Under Secretary of the U.S. Department of Agriculture Bill Hawks ("Hawks"), that APHIS is required to find that a privately sanctioned individual has not complied with the private sanctions before APHIS may initiate proceedings. We find this argument unpersuasive. In that letter, Hawks relies on *American Horse Protection Ass'n, Inc. v. Veneman*, No. 1:01-cv-00028-HHK (D.D.C. July 9, 2002), in discussing APHIS's enforcement role in light of the Operating Plan. J.A. at 225-26 (Under Secretary Letter at 3-4). The district court in *Veneman*, when determining whether the Operating Plan amounted to an impermissible delegation of APHIS's authority, found that APHIS's role under the Operating Plan was limited in some respects. *Veneman*, No. 1:01-cv-00028-HHK, at 6. With all due respect to that district judge, we believe that its determination is inaccurate. For the reasons discussed above, we conclude that APHIS did not limit its ability to enforce the Act by signing the Operating Plan. Because it appears that Hawks relied on *Veneman*'s interpretation of the Operating Plan, any statements that Hawks made in the letter are irrelevant.

[16] H. Derickson also claims, in the last paragraph of his brief, that the action by NHSC was "at the very lest [sic] quasi-criminal in nature, as he had to pay a fine, and also was suspended from practicing his chosen profession for a period of two (2) years." Dericksons Br. at 32. He then asserts, without further explanation, that double jeopardy should apply in the present action. Given his failure fully to develop this issue, the issue is waived. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted). Nonetheless, as there are no criminal actions or criminal penalties involved at any level of this case, we can easily observe that the double jeopardy claim is meritless. *See Herbert v. Billy*, 160 F.3d 1131, 1136 (6th Cir. 1998).