**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0115n.06

**No. 09-4114**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 17, 2011**
LEONARD GREEN, Clerk

LORENZO PEARSON, dba L&L Exotic
Animal Farm,

       Petitioner,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE; TOM VILSACK, Secretary
of Agriculture,

       Respondents.

ON PETITION FOR REVIEW OF
AN ORDER OF THE SECRETARY,
UNITED STATES DEPARTMENT
OF AGRICULTURE

_____/

BEFORE:    SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

    **CLAY, Circuit Judge.** Petitioner Lorenzo Pearson petitions for review of the decision and order of the Secretary of the United States Department of Agriculture, terminating his license to own and exhibit wild animals, issuing a cease and desist order, and imposing civil sanctions in the amount of $93,975, for alleged violations of the Animal Welfare Act, 7 U.S.C. §§ 2131–2159. For the reasons set forth below, the petition for review is **DENIED**.

## BACKGROUND

Between 1985 and 2005, Petitioner Lorenzo Pearson[1] was a licensed exhibitor under the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131–2159, and proprietor of a business called L&L Exotic Animal Farm in Akron, Ohio. At the peak of his business, Petitioner was the caretaker for more than eighty-two animals, including lions, tigers, and bears, which he displayed at fairs and exhibits. Petitioner also successfully underwent periodic inspections and annually renewed his exhibitor's license.

However, beginning in May 1999,[2] employees of the Animal and Plant Health Inspection Service ("APHIS") cited Petitioner for a number of violations of the AWA and associated regulations. Between May 1999, when Petitioner was initially found to be non-compliant, and February 2006, Petitioner's facilities were inspected by APHIS officials more than twenty-five times and Petitioner was cited for more than 280 instances of non-compliance. These included minor infractions such as using a cage with incorrect dimensions, as well as larger infractions concerning drainage and sanitation at the facility, the quality of record keeping, the adequacy of food provided to the animals, and the adequacy of veterinary care.[3]

---

[1] In proceedings before the Secretary, Petitioner's name was mistakenly spelled Lorenza Pearson.

[2] Petitioner was previously cited during inspections occurring in May and November 1998; however, these citations were later withdrawn.

[3] Petitioner implies that the APHIS inspections were improper due to the participation of inspector Dr. Norma Harlan, who allegedly cited Petitioner for infractions after he refused to cooperate in the investigation of another animal handler. However, Petitioner has not briefed the issue of selective enforcement, so we deem it waived on appeal. *See Molina-Crespo v. U.S. Merit Sys. Prot. Bd.,* 547 F.3d 651, 656 n.2 (6th Cir. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)).

Although the record reveals that Petitioner corrected many infractions brought to his attention, some problems persisted across inspections, including inadequate sewage and sanitation, lack of potable water for animals, preparation of unwholesome food, and inadequate veterinary care. On June 12, 2002, following nearly a dozen inspections that revealed infractions, APHIS commenced administrative disciplinary proceedings against Petitioner. However, these proceedings stalled after the administrative law judge ("ALJ") assigned to the case became unavailable. Petitioner continued to operate his business and undergo periodic inspection.

In addition to repeated APHIS investigations, Petitioner became the subject of a state nuisance action brought by the Summit County Board of Health that resulted in the seizure of many of his animals. As scrutiny mounted, Petitioner's upkeep of his facilities and compliance with animal welfare regulations appears to have decreased. During a May 2005 visit, Dr. Albert Lewandowski, an APHIS inspector formerly employed by the Akron Zoo, described Petitioner's facilities as "squalid," and oversaw the seizure of seven of Petitioner's bears that remained without adequate food, water, or veterinary care despite a previous warning. In 2005, Petitioner was also cited for denying APHIS inspectors access to his facilities on two occasions, and for storing animals offsite in an attempt to evade inspection. On October 5, 2005, APHIS sent Petitioner a license termination letter that served to initiate the proceedings which form the basis of this appeal.

**Procedural History**

On June 14, 2002, following a dozen inspections that revealed infractions, disciplinary proceedings were commenced against Petitioner and a hearing was held September 24–25, 2003 before ALJ Leslie Holt. After APHIS and the United States Department of Agriculture

("Respondents") presented their case and had their witnesses cross-examined, ALJ Holt became unavailable and proceedings were stayed before Petitioner was able to present his defense. The case was later reassigned to ALJ Victor W. Palmer. Petitioner moved to have ALJ Palmer retry the case in its entirety, claiming that retrial was necessary to permit credibility assessments of Respondents' witnesses. This motion was denied. However, ALJ Palmer agreed to recall Respondents' witnesses for cross-examination. A hearing was initially scheduled for June 8–10, 2004, but proceedings were repeatedly pushed back due to scheduling conflicts from both parties.

On March 17, 2006, Respondents filed an amended complaint that covered infractions occurring after June 2002. Respondents' amended complaint also sought a cease and desist order, civil sanctions in the amount of $100,000, and permanent revocation of Petitioner's AWA license. A hearing was scheduled for June 20–23, 2006, and April 4, 2006 was designated as the parties' deadline to submit exhibits. However, Petitioner failed to submit exhibits by the deadline.

On May 23, 2006, Petitioner's home was destroyed in a fire, along with most of the documents, veterinary reports, financial records, and photographs pertaining to Petitioner's animal farm. Citing the fire damage, on June 15, 2006 Petitioner moved to continue the hearing and requested three additional months to prepare. This motion was denied on grounds that rescheduling posed an administrative inconvenience, destroyed evidence could not be replaced, and Petitioner could make his case using witness testimony. Petitioner renewed his request for a continuance at the start of his June 20, 2006 hearing, and then again in the middle of proceedings. Petitioner also sought to continue proceedings on the additional ground that a veterinarian who cared for several

of his animals had a scheduling conflict and would be unable to testify. This request was denied on grounds that Petitioner had been given adequate opportunity to assemble witnesses for trial.

In a opinion dated April 6, 2007, ALJ Palmer issued a cease and desist order and permanently revoked Petitioner's exhibitor's license on grounds that Petitioner repeatedly committed willful violations of the AWA. However, ALJ Palmer declined to impose civil sanctions—reasoning that permanent revocation would provide sufficient deterrence under the Act, such that fines and civil sanctions were unwarranted.

Petitioner appealed the ALJ's decision to the Secretary of the United States Department of Agriculture ("the Secretary") on July 23, 2007. On August 21, 2007, Respondents cross-appealed the ALJ's decision not to impose sanctions. On July 13, 2009, a judicial officer acting as a designee for the Secretary released a Decision and Order adopting the ALJ's determination that Petitioner repeatedly violated the AWA, as well as the ALJ's decision to deny Petitioner's motion for a continuance and retrial, and to revoke Petitioner's license. However, the judicial officer granted Respondents' cross-appeal, concluding that civil sanctions in the amount of $93,975[4] were

---

[4] The judicial officer explained his sanction award as follows:

I assess Mr. Pearson a civil penalty of $275 for each violation committed on or before June 23, 2005, and $375 for each violation committed after June 23, 2005. Except that, I assess Mr. Pearson $1,000 for each failure to have a responsible person available to allow APHIS officials to inspect his facility, in violation of section 2.126(a) of the Regulations (9 C.F.R. § 2.126(a)) (August 27, 2002, May 5, 2003, and May 11, 2005); $2,000 for housing animals at unapproved locations on January 18, 2004, in violation of section 2.5(d) of the Regulations (9 C.F.R. § 2.5(d)); $2,000 for housing animals at unapproved locations on January 30, 2004, in violation of section 2.5(d) of the Regulations (9 C.F.R. § 2.5(d)); $2,000 for the January 30, 2004, failure to notify the Animal Care Regional Director of additional sites at which Mr. Pearson housed animals, in violation of section 2.8 of the Regulations (9 C.F.R. § 2.8); and $2,000 for each refusal to allow APHIS officials to inspect his entire facility, in violation of section 2.126(a)(4) of the Regulations (9 C.F.R. §

appropriate in light of what he determined were Petitioner's 281 individual violations of the AWA and associated regulations. *See In re Lorenza Pearson, d/b/a L&L Exotic Animal Farm*, No. 02-0020, 2009 WL 2134028, at \*30 (U.S.D.A. July 13, 2009).

In this timely petition for review, Petitioner challenges the Secretary's decision on procedural grounds, and asserts that substantial evidence does not support his determinations.

## DISCUSSION

### I. Standard of Review

"We review a decision of the U.S. Department of Agriculture under the Act only to determine whether the proper legal standards were employed and [whether] substantial evidence supports the decision." *Derickson v. U.S. Dep't of Agric.*, 546 F.3d 335, 340 (6th Cir. 2008) (citing *Gray v. U.S. Dep't of Agric.*, 39 F.3d 670, 675 (6th Cir. 1994) (internal quotation marks omitted). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Gray*, 39 F.3d at 675 (citing *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 184 (6th Cir. 1986)). "The record, as a whole, is considered in determining the substantiality of evidence." *Derickson*, 546 F.3d at 340–41.

Because the judicial officer "acts as the final deciding officer in lieu of the Secretary in Department administrative proceedings," *Utica Packing Co. v. Block*, 781 F.2d 71, 72 (6th Cir. 1986), we limit our review to his decision. *See also Marine Mammal Conservancy, Inc. v. U.S.*

---

2.126(a)(4)) (May 12, 2005, and October 5, 2005). I find these violations are extremely serious because they thwart the Secretary of Agriculture's ability to enforce the Animal Welfare Act.

*In re Lorenza Pearson*, 2009 WL 2134028, at \*30 n.9.

*Dep't of Agric.*, 134 F.3d 409, 410–411 (D.C. Cir. 1998) (judicial review is limited to "decisions of the judicial officer on appeal"). When a judicial officer disagrees with certain conclusions of the ALJ, "the standard does not change; the ALJ's findings are simply part of the record to be weighed against other evidence supporting the agency." *Rowland v. U.S. Dep't of Agric.*, 43 F.3d 1112, 1114 (6th Cir. 1995) (internal citations and quotation marks omitted).

Finally, "when the issue is whether the agency followed the requisite legal procedure, our review is limited, but exacting." *Coal. for Gov't Procurement v. Fed. Prison Industs., Inc.*, 365 F.3d 435, 457 (6th Cir. 2004). When an agency is accused of violating a statute, we examine *de novo* whether "statutorily prescribed procedures have been followed." *Id.* (citing *Nat'l Res. Def. Council, Inc. v. Sec. & Exch. Comm'n*, 606 F.2d 1031, 1045 (D.C. Cir. 1979)). Alternately, when an appeal concerns an agency's compliance with ambiguous procedural regulations, we consider only whether the agency's interpretation is "plainly erroneous or inconsistent." *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008).

## II.    Procedural Aspects of the Secretary's Decision

### A.    The Secretary's Decision Not to Retry Petitioner's Case

First, Petitioner argues that the Secretary erred by allowing ALJ Palmer to take over the proceedings for ALJ Holt instead of granting Petitioner's request to retry the case, and that he suffered prejudice as a result because ALJ Palmer was unable to assess the credibility of Respondents' witnesses. United States Department of Agriculture ("U.S.D.A.") regulations speak directly to the issue of when abatement and retrial are proper, providing that: "[i]n case of the absence of the Judge or the Judge's inability to act, the powers and duties to be performed by the

Judge under these rules of practice in connection with any assigned proceeding may, without abatement of the proceeding unless otherwise directed by the Chief Judge, be assigned to any other Judge." 7 C.F.R. § 1.144(d).

In denying Petitioner's request to terminate proceedings and grant a retrial, ALJ Palmer interpreted this provision to mean that "absent an order from the Chief Administrative Judge, the case will proceed from the point at which the first administrative law judge became unavailable." The judicial officer affirmed. We do not believe this interpretation was "plainly erroneous or inconsistent with the regulation." *See Intermodel Tech., Inc. v. Peters*, 549 F.3d 1029, 1031 (6th Cir. 2008) (providing standard for reversal). Further, to address Petitioner's concerns regarding witness testimony, ALJ Palmer recalled all of Respondents' witnesses and allowed them to be recross-examined by Petitioner so that they could be impeached and their credibility examined anew. These measures were adequate to ensure that Petitioner was not unduly prejudiced. Accordingly, Petitioner's procedural objection is not well taken.

**B.     The Secretary's Denial of Petitioner's Motion for a Continuance**

Second, Petitioner alleges that the Secretary erred by denying his motion for a continuance after Petitioner's home was destroyed in a fire. While we are troubled by the Secretary's disposition of this issue,[5] a denial of a continuance is reviewed deferentially for abuse of discretion and petitioners must establish prejudice. *See, e.g., United States v. Lewis*, 605 F.3d 395, 401 (6th Cir.

---

[5] We have little doubt that Petitioner's request for a continuance was based on a legitimate and compelling reason, not one that was "dilatory, purposeful or contrived" or the product of Petitioner's own actions. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). However, this alone does not compel a finding of abuse of discretion. *Id.*

2010); *Fitzhugh v. Drug Enforcement Admin.,* 813 F.2d 1248, 1252 (D.C. Cir. 1987); *NLRB v. Hackenberger*, 531 F.2d 364, 365 (6th Cir. 1976).

In the instant case, Petitioner's challenge to the Secretary's decision fails because he is unable to establish prejudice. Petitioner forfeited his right to submit evidence to the Secretary on April 6, 2006, two months prior to the fire, by failing to comply with the ALJ's deadline regarding the exchange and submission of exhibits. *See* 7 C.F.R. § 1.322(g) ("[N]o exhibit not provided to the opposing party as provided above shall be admitted into evidence at the hearing absent a showing of good cause."). Even assuming that Petitioner's late evidence would have been received, Petitioner has failed to indicate, even on appeal to this Court, what if any destroyed evidence he would have been able to reamass if given additional time. Without any such proffer, we are forced to conclude that Petitioner was not prejudiced, and that no abuse of discretion occurred.

C.      **The Secretary's Decision to Grant Respondents' Cross-Appeal for Civil Sanctions**

Finally, Petitioner contends that the Secretary violated agency procedural rules when he assessed civil sanctions against Petitioner pursuant to a cross-appeal that Respondents filed nearly three months after the ALJ decision. Petitioner argues that Respondents' cross-appeal contravenes 7 C.F.R. § 1.145(a) of the U.S.D.A. Rules of Practice, which provides that "[w]ithin 30 days after receiving service of the Judge's decision . . . a party who disagrees with the decision, any part of the decision, or any ruling by the Judge or who alleges any deprivation of rights, may appeal the decision to the Judicial Officer by filing an appeal petition with the Hearing Clerk." *Id.*

After reviewing the Secretary's decision and pertinent regulations, we conclude that no legal error occurred. As a preliminary matter, Petitioner's reliance on 7 C.F.R. § 1.145(a) is misplaced.

Cross-appeals are in fact governed by sub-section (b) of the provision, which provides that "[w]ithin 20 days after the service of a copy of an appeal petition and any brief in support thereof, filed by a party to the proceeding, any other party may file with the Hearing Clerk a response in support of or in opposition to the appeal and in such response any relevant issue, not presented in the appeal petition, may be raised." 7 C.F.R. § 1.145(b). This procedural regulation has been interpreted to "permit a party to await the other party's appeal before filing a cross-appeal raising any relevant issue, without first filing a protective notice of appeal." *In re Daniel Sterbin & William Strebin*, 56 Agric. Dec. 1095, at *32 (U.S.D.A. Nov. 26, 1997) (table) (describing the rule as well-settled). Therefore, Respondents' brief was not due until 20 days after Petitioner submitted his appeal, and Respondents were entitled to raise the issue of sanctions, even though it was not raised in Petitioner's appeal petition.

Respondents' cross-appeal was also timely. Following the hearing, Petitioner and Respondents were each granted a filing extension pursuant to the provisions of 7 C.F.R. §§ 1.143(d) and 1.147(f). Petitioner's appeal, which was initially due on May 9, 2008, was timely filed on July 23, 2007 pursuant to an extension. Respondents' cross-appeal, initially due on August 13, 2007 based on the provisions of 7 C.F.R. § 1.145(b), was timely filed on August 21, 2007 pursuant to an extension granted on August 8, 2007 that made August 21, 2007 the new due date. Because Respondents cross-appealed for sanctions in accordance with agency procedures and pursuant to a formal extension, we believe that the Secretary did not err when he took Respondents' brief as timely.

Nonetheless, despite no finding of legal error, we feel compelled to express our concern regarding the Secretary's handling of the imposition of the fine. Had Petitioner not exercised his right to appeal, presumably he would only be facing revocation of his license, not revocation plus a $93,957 fine. While the Secretary was fully authorized to impose the fine, this outcome may discourage other petitioners from exercising their statutory rights.

## III. Evidentiary Support for the Secretary's Determinations

Challenging a handful of the ALJ's factual findings, Petitioner contends that his license revocation was not supported by substantial evidence. This argument is without merit. An AWA license may be revoked following a single, willful violation of the Animal Welfare Act, *see Cox et al. v. U.S. Dep't of Agric.*, 925 F.2d 1102, 1105 (8th Cir. 1991), and in the instant case the Secretary based his determinations on a substantial, perhaps overwhelming body of evidence, including investigation reports, photographs, witness testimony, and exhibits concerning nearly twenty-five inspections of Petitioner's facilities that revealed infractions. Petitioner's failure to bring his facilities into compliance after repeated warnings also makes clear that his violations were willful. *See Hodgins v. U.S. Dep't of Agric.*, 238 F.3d 421, at *9 (6th Cir. Nov. 20, 2000) (table) (defining willful conduct as conduct "knowingly taken by one subject to the statutory provisions in disregard of the action's legality"). Therefore, we affirm the Secretary's findings.

## CONCLUSION

The Secretary did not commit procedural error with respect to the proceedings, and the record substantiates that Petitioner failed to conform his conduct to the requirements of the Animal Welfare Act, despite having numerous opportunities to do so. Therefore, the petition for review is **DENIED**.