**Richard N. GARVER, Petitioner,**

v.

**UNITED STATES of America and United States Department of Agriculture, Respondents.**

No. 86–4081.

United States Court of Appeals, Sixth Circuit.

Feb. 3, 1988.

Thomas R. Smith, Carroll, Bunke, Henkel, Haverkamp & Smith, Cincinnati, Ohio, for petitioner.

Diane Langton, James M. Kelly, Raymond W. Fullerton, Aaron B. Kahn, Margaret M. Breinholt, Office of Gen. Counsel, U.S. Dept. of Agriculture, Washington, D.C., Edwin Meese, U.S. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for respondents.

Before JONES and BOGGS, Circuit Judges, and PECK, Senior Circuit Judge.

BOGGS, Circuit Judge.

Richard Garver, a registered livestock dealer under the Packers and Stockyards Act, 7 U.S.C. §§ 201(d) & 203 (the Act), caused a loss of over $700,000 to other parties in the livestock business. After a hearing, an Agriculture Department administrative law judge found that Garver failed to meet the solvency requirements of the Act in violation of 7 U.S.C. § 204; that he willfully violated the fair trade practice requirements of the Act, 7 U.S.C. § 213(a); and that he willfully violated the prompt pay mandate of the Act, 7 U.S.C. § 228b. Although the Packers and Stockyards Administration asked that Garver be suspended for two years, the ALJ determined that a thirty-day suspension, coupled with an arrangement whereby Garver would con-

tinue operating under the bond of another dealer in an attempt to pay off his debts, would be a sufficient sanction. The Packers and Stockyard Administration appealed, and the Agriculture Department Judicial Officer, the Secretary's designate for these purposes, imposed a two-year suspension as a sanction. *See* 7 C.F.R. §§ 1.142(c), 1.145(i), 2.35.

■ Upon consideration of the parties' briefs and the record of the administrative proceedings, we find that the Judicial Officer's choice of sanction is not unwarranted in law or without justification in fact. Accordingly, we affirm the imposition of the two-year sanction.

Garver does not contest the charges against him. Rather he argues that the two-year sanction must be overturned due to bias on the part of the Judicial Officer.

■ This court does not review administrative agency sanctions for reasonableness, or for whether they comport with our ideas of justice. The Supreme Court clearly held in *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 187–88, 93 S.Ct. 1455, 1458–59, 36 L.Ed.2d 142 (1973), that those determinations are for the agency:

> The employment of a sanction ... [is] not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases.... The Secretary's practice ... is to employ that sanction as in his judgment best serves to deter violations and achieve the objec-

tives of that statute. Congress plainly intended in its broad grant to give the Secretary that breadth of discretion.

The sanction in this case was among those permitted by the authorizing statute and the departmental regulation, and the statute and regulation themselves are not challenged.

Garver, instead, rests his attack on certain past writings of the Judicial Officer, Donald Campbell. In those writings, which were in earlier decisions officially published in the Agricultural Decisions series,[1] Campbell opined at some length about the usefulness of severe sanctions as a deterrent to future misconduct and cited various advocates of the virtues of punishment in support of his opinion. In his brief on appeal, Garver takes particular offense at Campbell's citations of "Plato, Socrates and Nietzsche" though he does not mention the references by Campbell to possibly more relevant modern writers on criminology such as Gordon Tullock and Isaac Ehrlich.[2]

While it may seem strange to some, including Garver, to observe such sentiments from a minor Agriculture Department official, the debate itself is long and honorable (as well as relevant). Past legal scholars and judges, including Jeremy Bentham,[3] H.L.A. Hart,[4] Lord Mansfield and Chief Justice John Bannister Gibson of the Pennsylvania Supreme Court[5] have broken the

1. *E.g. In re Worsley*, 33 Agric.Dec. 1547 (1974).

2. Tullock, "Does Punishment Deter Crime?" 36 *The Public Interest* 103, 109 (Summer 1974); and Ehrlich, "Participation in Illegitimate Activities: A Theoretical and Empirical Investigation," 81 *Journal of Political Economy* 545 (May–June 1973) (cited in *Worsley*, 33 Agric. Dec. at 1566 n. 40· & n. 40a).

3. *See e.g.* Bentham, Principles of Penal Law, Works (Bowring Ed.) (1843).

4. *See e.g.* Hart, The Morality of the Criminal Law (1965); Hart, Prolegomenon to the Principles of Punishment (1959).

5. Karl Llewellyn commented on the effect of Mansfield's and Gibson's decisions in language particularly apt here:
> [S]ome of the sparks caused by Mansfield and Gibson, great judges though both were, were

struck by a brusqueness of manner and language toward men and toward tradition which is no part of that grace in work which is the Grand Style at its best. For let me repeat: "style" refers in this connection not to literary quality or tone, but to the manner of doing the job, to the way of craftsmanship in office, to a functioning harmonization of vision with tradition, of continuity with growth, of machinery with purpose, of measure with need. This can conceivably work out into florid words or into ponderous Elizabethan euphuism; if so, I am prepared to be laden with the language if I may have the thing. But it is worthy of note (and it is perhaps some evidence that style grips in one fist more phases of man and culture than we always realize) that work in the Grand Style has, historically, tended into simplicity of verbal form and of sentence and paragraph

ground Campbell now plows. The fact that Judicial Officer Campbell holds and cites such views cannot be considered evidence of judicial bias. In the particular case, there is no indication whatsoever that Campbell did not function in a judicial capacity, or that he entertained preconceived notions as to a sanction in this particular case.

The prerequisite for a disqualifying "personal" bias, as opposed to a disagreement over the outcome is that

> the alleged bias 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). *See also In re M. Ibrahim Khan,* 751 F.2d 162, 164 (6th Cir.1984).... The bias must be personal, not judicial. It must arise ' "out of the judge's background and association" and not from the "judge's view of the law." ' *United States v. Story,* 716 F.2d 1088, 1090 (6th Cir.1983) (quoting *Oliver v. Michigan State Board of Education,* 508 F.2d 178, 180 (6th Cir.1974), *cert. denied* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975)).

*First National Monetary Corp. v. Weinberger,* 819 F.2d 1334, 1337 (6th Cir.1987).

In his original opinion, Campbell discussed at some length the particular gravity of Garver's offenses, and how the ALJ's proposed sanction compared with sanctions given for other offenses. In response to a motion for reconsideration raising essentially the points raised on this appeal, Campbell specifically addressed the magnitude of the loss caused by Garver in comparison with the losses caused by the general run of defaults which had occurred under the jurisdiction of this program. There certainly was nothing in his response which indicated bias, or a refusal to consider the arguments made.

We have here simply a dispute over the validity of a particular sanction, the type of argument that can be made in every type of punitive or correctional decision. It certainly is true, as Garver's counsel points out, that if Garver is suspended, he will no longer be able to use the proceeds from this profession (apparently the only one he knows) to attempt to pay off his debt. But that equally would be true of any period of incarceration imposed for any financial crime. In addition, as this is not a criminal proceeding, but an administrative one, our powers of review for these reasons are even more limited.

Even though any or all of our judges may feel that the sanction was too harsh, or that we might have come to a different conclusion, there simply is not evidence, let alone any preponderance of evidence, that this decision was a result of cognizable personal bias. There is no indication in the record that Campbell's decision is based on any information apart from what he learned from his participation in this case and from his years of service as the Department of Agriculture's Judicial Officer. Consequently, there is no evidence of disqualifying bias before us.

It may be sound advice to all judges and judicial officers to be as temperate as possible when rendering decisions. It would, however, be a great disservice to imply that a vigorous expression of views on a subject appropriately before the tribunal can become evidence of judicial bias.

Accordingly, the final decision of the Secretary of Agriculture imposing the sanction of a two-year suspension is AFFIRMED.

---

structure, in combination with a certain pungency.

K. Llewellyn, The Common Law Tradition 37 (1960).