968 F.2d 19
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 FARM FRESH, INC., Plaintiff-Appellant,
v.
Clayton YEUTTER, Secretary of Agriculture, United States
Department of Agriculture, Defendant-Appellee,
and
Associated Milk Producers, Inc., and Mid-America Dairymen,
Inc., Defendants-Intervenors-Appellees.
 No. 91-6286.
 United States Court of Appeals, Tenth Circuit.
 June 15, 1992.
 
 Before MOORE, ENGEL* and TACHA, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Farm Fresh, Inc., contests the Secretary of Agriculture's decision to rezone Lincoln County, Oklahoma, under the Agricultural Marketing Agreement Act. We affirm.
 
 I.
 
 2
 The Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§ 601-674, authorizes the Secretary of Agriculture to issue and amend "orders"[1] regulating the handling of milk and other agricultural commodities. 7 U.S.C. § 608(1). Under the Act, the Secretary is empowered to set minimum prices which all "handlers" such as Farm Fresh must pay for milk purchased from producers or cooperative associations of producers such as Associated Milk Producers, Inc., and Mid-America Dairymen, Inc.
 
 
 3
 Within a designated geographic marketing area or zone, the minimum price is uniform for all handlers, with adjustments made for the location at which the delivery of the milk is made to the handler. This adjustment is referred to as a "location adjustment." Because producers pay the cost of transporting milk from their farm to the handler's plant, the purpose of the location adjustment is to encourage milk to move from outlying locations to urban processing plants by compensating the producers for their increased transportation costs. Location adjustments recognize that a handler who receives milk near consuming centers has a more valuable commodity than a handler who processes milk close to the producing areas and has to transport the products to the consumer markets.
 
 
 4
 Order No. 106 regulates the handling of milk in the Southwest Plains marketing area, which encompasses portions of Oklahoma, Kansas, Missouri, and Arkansas. Order No. 106 provides for location adjustments based on a zone pricing arrangement and not on the precise location of individual processing plants. In the Southwest Plains marketing area, the base zone, Zone I, is centered around Oklahoma City and extends east to the Arkansas border. Handlers with plants located in zones to the north and northeast of Zone I have a negative price adjustment, meaning they pay less for milk than handlers in Zone I. Similarly, zones to the west and south of Zone I have a positive price adjustment, meaning they pay more.
 
 
 5
 At issue in this case is the Secretary's decision to rezone Lincoln County, Oklahoma, from Zone III, which has a negative price adjustment, to Zone I, which has no price adjustment. In its motion for summary judgment to the district court, Farm Fresh argued the Secretary's decision should be set aside because it is the product of the Department of Agriculture Judicial Officer's bias; the Notice of Hearing was inadequate and insufficient to support the Lincoln County price increase; and the Secretary's rulemaking decision is not supported by substantial evidence and is arbitrary and capricious.
 
 II.
 
 6
 The material facts are not in dispute. On September 26, 1985, the Secretary published a Hearing Notice announcing a public hearing to convene on November 6, 1985. The public hearing was to consider proposals to expand the geographic scope of the Southwest Plains Milk Marketing Order.
 
 
 7
 Approximately one month later, Farm Fresh held a groundbreaking ceremony at Chandler, Oklahoma, to announce construction of a new dairy plant. The Chandler facility replaces Farm Fresh's plant in Ponca City, Oklahoma. Chandler is in Lincoln County whereas Ponca City is in Kay County. As of the date of the groundbreaking ceremony, both counties were designated Zone III.
 
 
 8
 On February 14, 1986, the Secretary issued a Notice of Hearing regarding the Southwest Plains Milk Marketing Order. The notice was mailed directly to Farm Fresh on February 14, 1986, and was published in the Federal Register on February 21, 1986. The notice stated the purpose of the hearing was to consider proposals to change the location adjustments to conform with the recently enacted Food Security Act. It also stated the hearing was to receive evidence with respect to the economic and marketing conditions which relate to the proposed amendments. Proposal No. 4 of the proposed amendments contained in the notice advocated rezoning Lincoln County, Oklahoma, to Zone I.
 
 
 9
 The hearing was held on March 4-7, 1986, and Farm Fresh appeared at the hearing, presented testimony in opposition to Proposal No. 4, and cross-examined witnesses. Farm Fresh also filed a post-hearing brief addressing Proposal No. 4.
 
 
 10
 On December 11, 1986, the Secretary published his final rule, which adopted the proposal to transfer Lincoln County from Zone III to Zone I. On February 2, 1987, Farm Fresh filed a petition with the Secretary requesting he declare the rezoning of Lincoln County not in accordance with law and seeking a refund of all monies charged pursuant to the rezoning. On March 23, 1988, the ALJ issued an Initial Finding and Order for Relief Hearing. In his decision, the ALJ ruled the Secretary's rezoning of Lincoln County was not in accordance with law and ordered briefing and a hearing on the relief to which Farm Fresh was entitled. The evidentiary hearing was held on June 23, 1988.
 
 
 11
 On February 22, 1989, the ALJ entered an Initial Decision and Order directing the Secretary to refund Farm Fresh the monies paid pursuant to the rezoning order but denying Farm Fresh's request for interest on the refund. On May 11, 1989, Farm Fresh appealed that portion of the order denying it interest on the refund. On May 22, 1989, the Department of Agriculture cross-appealed, arguing the Secretary's decision transferring Lincoln County from Zone III to Zone I was valid.
 
 
 12
 On April 12, 1990, Department of Agriculture Judicial Officer Campbell reversed the ALJ's decision and dismissed Farm Fresh's petition. This represents the final decision of the Secretary of Agriculture.
 
 III.
 
 13
 Because we believe the district court correctly and adequately addressed Farm Fresh's challenges to the adequacy of the Notice of Hearing, we will only address Farm Fresh's claims of bias and insufficient evidence. Farm Fresh asserts the Judicial Officer's reversal of the ALJ's decision was a partisan, pro forma, rubber stamp of administrative actions which denied Farm Fresh its statutory right to independent judicial review. As evidence, Farm Fresh contends a complete review of all the Judicial Officer's decisions documents the consistency of his partisan rulings.
 
 
 14
 Bias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it "in" for the party for reasons unrelated to the officer's view of the law. McLaughlin v. Union Oil Co. of Cal., 869 F.2d 1039, 1047 (7th Cir.1989). See, e.g., Jenkins v. Sterlacci, 849 F.2d 627, 634-35 (D.C.Cir.1988); United States v. Balistrieri, 779 F.2d 1191, 1202 (7th Cir.1985), cert. denied, 475 U.S. 1095 (1986). The alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966); Garver v. United States, 846 F.2d 1029, 1031 (6th Cir.), cert. denied, 488 U.S. 820 (1988); Phillips v. Joint Legislative Comm., 637 F.2d 1014, 1020 (5th Cir.1981), cert. denied, 456 U.S. 960 (1982); accord United States v. Troxell, 887 F.2d 830, 834 (7th Cir.1989).
 
 
 15
 Farm Fresh has not presented evidence sufficient to establish that the Judicial Officer's decision stemmed from "an extrajudicial source" or was predicated on "some basis other than what he learned from his participation in the case." The Judicial Officer's opinion shows a thorough understanding of location adjustments in milk marketing orders and, more importantly, recognizes that much of the evidentiary rationale for the Secretary's decision in this case is geographical in nature. The Judicial Officer's discussion of the relevant geographical factors indicates he did not prejudge this case. Thus, we join several other courts in finding Judicial Officer Campbell has discharged his duties in a conscientious and impartial manner. See, e.g., Garver v. United States, 846 F.2d at 1030-31; Parchman v. United States Dep't of Agric., 852 F.2d 858, 866 (6th Cir.1988); Mattes v. United States, 721 F.2d 1125, 1132-33 (7th Cir.1983).
 
 IV.
 
 16
 The Secretary's findings regarding the rezoning must be upheld if supported by substantial evidence in the record. Parchman, 852 F.2d at 863 (citing Blackfoot Livestock Comm'n v. Dep't of Agric., 810 F.2d 916, 920 (9th Cir.1987); Farrow v. United States Dep't of Agric., 760 F.2d 211, 213 (8th Cir.1985); Mattes v. United States, 721 F.2d at 1128-29). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Because we presume the existence of facts justifying the Secretary's determination, the burden of proof falls on the party challenging the validity of the agency's ruling. Lewes Dairy, Inc. v. Freeman, 401 F.2d 308, 316 (3d Cir.1968), cert. denied, 394 U.S. 929 (1969).
 
 
 17
 The Secretary's Decision notes that the primary sources of supply for the Southwest Plains market are Missouri (45%), Oklahoma (28%), and Kansas (21%). 51 Fed.Reg. 40,183 (1986) (codified at 7 C.F.R. pt. 1106). The major population centers are Oklahoma City and Tulsa. 51 Fed.Reg. 40,183. In reaching his decision, the Secretary states:
 
 
 18
 The primary consideration is whether the costs incurred in supplying the Chandler plant with milk from the major production areas of the market are more closely associated with the value of milk in Zone I or with the lower value of milk delivered to plants in Zone III that are nearer to the major production areas of the market.
 
 
 19
 51 Fed.Reg. 40,187.
 
 
 20
 In this regard, the Secretary noted that, "Chandler is about 100 miles further from [the southern Kansas supply] area than Ponca City. Consequently, greater costs would be incurred to supply milk to the Chandler location than to the Ponca City or other Zone III locations from southern Kansas." 51 Fed.Reg. 40,187.
 
 
 21
 Responding to Farm Fresh's claim that Chandler is closer to the major production area in southwestern Missouri, the Secretary noted that "the claim is not supported by testimony of the specific southwestern Missouri locations involved." 51 Fed.Reg. 40,187. However, the Secretary found that the "relevant mileage comparison with respect to supplies of milk in southwest Missouri is with Tulsa, not Ponca City." 51 Fed.Reg. 40,187. As the Secretary explained:
 
 
 22
 In this regard, Chandler is about 60 miles further from the southwestern Missouri production area than is Tulsa. This indicates that the value of milk delivered to Chandler is greater than the value of milk delivered to Tulsa. If prices were the same at Tulsa and Chandler, there would be no economic incentive under the order for producers to incur the additional costs involved to supply the Chandler location, versus Tulsa, from the southwestern Missouri production area.
 
 
 23
 The foregoing lends considerable support to the testimony of cooperative associations that it would cost more than the additional 18 cents to supply Farm Fresh at its new plant location at Chandler. Because of the distances involved, milk originating in both the major southwestern Missouri and southern Kansas production areas has a greater value delivered to Chandler than to other Zone III locations at Tulsa, Enid or Ponca City. The producers who supply the Chandler plant will provide a greater economic service to Farm Fresh than the service provided in supplying other plants in Zone III that are nearer the primary production areas of the market, and should be compensated accordingly. Consequently, all relevant factors involved, rather than speculation, indicate that Lincoln County should be included in Zone I.
 
 
 24
 51 Fed.Reg. 40,187.
 
 
 25
 We agree that Farm Fresh has failed to prove the Secretary's decision is not supported by substantial evidence. In addition to the foregoing, Farm Fresh's president testified that Oklahoma City represented one of the areas of greatest growth in terms of distribution for the Ponca City plant and that movement of the plant to Chandler would decrease the cost of transporting milk to the Oklahoma City area. Based on this evidence, we conclude it was reasonable for the Secretary to find the Chandler plant would compete both for sales and procurement with Zone I plants. The Secretary's determination that the value of milk delivered to Chandler is more closely associated with Zone I than with Zone III is supported by undisputed testimony the milk suppliers would incur greater costs in supplying the Chandler plant and the increased costs would be more than eighteen cents per hundredweight. Therefore, the Secretary's decision to rezone Lincoln County must be AFFIRMED.
 
 
 
 *
 Honorable Albert J. Engel, Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 A federal milk "order" is the equivalent of an agency regulation within the meaning of the Administrative Procedure Act and is adopted upon the basis of an evidentiary record pursuant to the Administrative Procedure Act's requirement for formal rulemaking