NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0373n.06

No. 13-3660

FILED

*May 19, 2014*

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LANZIE CARROLL HORTON, JR.,

       Petitioner,

v.

UNITED STATES DEPARTMENT
OF AGRICULTURE, ET AL.,

       Respondents.

ON PETITION FOR REVIEW FROM
THE UNITED STATES DEPART-
MENT OF AGRICULTURE

BEFORE:     BATCHELDER, Chief Judge; SILER and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Lanzie Carroll Horton, Jr., was found to be in violation of the Animal Welfare Act ("AWA" or "the Act"), 7 U.S.C. §§ 2131–2159 (2006), by an Administrative Law Judge ("ALJ"), who issued a cease and desist order to prevent further violations of the Act and ordered Petitioner to pay $14,430 in civil penalties. Both Petitioner and Respondent, the Administrator of the Animal and Plant Health Inspection Service ("APHIS"), appealed the ALJ's decision to a judicial officer ("JO"), acting for the Secretary of the Department of Agriculture (the "Department"), who increased the civil penalties amount from $14,430 to $191,200. Petitioner appeals this decision, alleging that (1) the ALJ and JO erred by failing to determine the willfulness of his actions, and (2) the JO improperly applied the Department's criteria for assessing civil penalties.

For the reasons that follow, we **DENY** the petition for review and **AFFIRM** the Secretary's Decision and Order.

## BACKGROUND

### I. Facts

During the time of the events described herein, Petitioner owned and operated Horton's Pups, a business located in Virginia, where Petitioner also lived. From November 9, 2006, through September 27, 2007, Petitioner sold dogs to William Pauley, a licensed dealer and owner of a retail pet store in Virginia called Pauley's Pups. Receipts in the record demonstrate that from November 9, 2006, through September 27, 2007, Pauley purchased a total of 914 puppies from Petitioner's business. Evidence also indicates that over a longer seven-to-eight-year period, Pauley purchased approximately 4,000 puppies from Petitioner. Resp.'s Br. at 11. When given the opportunity to review and contest Pauley's statements and records, Petitioner "stated that he was sure that Pauley's Pups' records were accurate, he did not want to review the records, and said that he sold all the dogs listed in the records." Pet'r's App. at 16.

On November 6, 2007, Petitioner received a letter from the APHIS Regional Director of Animal Care for the Eastern Region, Dr. Elizabeth Goldentyer, who warned that Petitioner likely needed to obtain a license to operate his business in compliance with the AWA. Her letter stated, "It has come to our attention that you may be conducting activities that would require you to be licensed or registered with us. Accordingly, we are enclosing a packet of AWA related information, including copies of the AWA regulations and standards and other materials." *Id*. at 12. Additionally, the letter welcomed Petitioner to "[c]ontact this office . . . if you have any questions regarding this letter or the Animal Welfare Act." *Id*.

On June 8, 2008, without first obtaining an AWA license, Petitioner sold forty-two dogs to Ervin Raber, a licensed dealer and owner of Golden View Kennels in Ohio. Later that year, on November 25, 2008, an APHIS investigator named Christopher Mina visited Petitioner, discussed Goldentyer's letter and the AWA licensing requirements, and inspected the premises. At that time, Mina asked whether Petitioner had received the letter and attached documents about licensing requirements from the Department, and Petitioner responded that he had. Petitioner also stated that he did not believe his transactions were of a nature that required him to obtain an AWA license. The inspector informed Petitioner that he did, in fact, need to obtain a license in order to continue engaging in the type of transactions his business regularly conducted; otherwise, he would have to cease and desist from operating as a dealer in violation of the AWA. At that time, Petitioner appears to have stopped the activity that violated the Act.[1]

## II.    Procedural History

On November 4, 2011, the APHIS Administrator filed a complaint against Petitioner. The complaint alleged that Petitioner, operating as Horton's Pups, violated the AWA by acting as a dealer as defined in 9 C.F.R. § 1.1 and 7 U.S.C. § 2132(f) from November 9, 2006, through September 20, 2009, without first obtaining a license from the United States Secretary of Agriculture (the "Secretary"). Petitioner filed an answer to this complaint on November 28, 2011.

After both parties conducted discovery, the Administrator filed a Motion for Summary Judgment on June 4, 2012. Petitioner filed his Memorandum in Opposition to the Motion for

---

[1]The record indicates that sometime between late December 2008 and January 17, 2009, Petitioner sold two dogs for use as pets to Harold Neuhart, a licensed dealer. Additionally, on or about September 30, 2009, Petitioner sold four dogs for use as pets to an unlicensed dealer named Pamela Knuckolls-Chappell. However, the JO found that these six sales did not constitute violations of the AWA, and that finding is not in dispute.

Summary Judgment, arguing that summary judgment would be improper because two genuine issues of material fact remained regarding whether Petitioner's AWA violations were willful and whether Petitioner operated as a dealer during the period from December 27, 2008, through September 30, 2009.

On January 2, 2013, the ALJ issued a decision granting in part and denying in part the Administrator's motion for summary judgment. The ALJ's order concluded that (1) from November 9, 2006, through September 27, 2007, Petitioner delivered for transportation, transported, sold, or negotiated the sale of 914 domesticated dogs for use as pets in violation of 9 C.F.R. § 2.1(a)(1)[2]; (2) on or about June 8, 2008, Petitioner delivered for transportation, transported, sold, or negotiated the sale of forty-two dogs in violation of 9 C.F.R. § 2.1(a)(1); (3) on or about December 27, 2008, Petitioner delivered for transportation, transported, sold, or negotiated the sale of two dogs in violation of 9 C.F.R. § 2.1(a)(1); and (4) on or about September 30, 2009, Petitioner delivered for transportation, transported, sold, or negotiated the sale of four dogs in violation of 9 C.F.R. § 2.1(a)(1). The ALJ also determined that 7 U.S.C. § 2149(b), which governs the assessment of civil penalties for violations of the Act, did not require that she make a willfulness determination before ordering Petitioner to cease and desist and pay civil penalties.

The ALJ applied the factors listed in § 2149(b) for assessing a civil penalty and found that Petitioner operated a large business, the gravity of his violations was serious due to the large number of violations he committed in a short period of time, and he failed to show good faith because he disregarded Goldentyer's letter and continued to conduct business as a dealer without an AWA license. The ALJ also found that Petitioner did not have a history of previous

---

[2]The regulation provides that "any person operating or intending to operate as a dealer . . . must have a valid license." 9 C.F.R. § 2.1(a)(1) (2013).

violations of the AWA and accepted as true his statement that he ceased acting in violation of the statute after receiving the APHIS investigator's warning in November 2008.[3] Based on these findings, the ALJ issued an order requiring that Petitioner cease and desist from further violations of the Act and pay $14,430 in civil penalties, which equates to $15 for each of the 962 violations.

Both Petitioner and Respondent appealed the ALJ's decision to a JO, who issued a Decision and Order on May 30, 2013. In this Decision and Order, the JO adopted most of the ALJ's findings and conclusions, including the finding that a willfulness determination was unnecessary and would not affect the outcome of the case. However, unlike the ALJ, the JO found that Petitioner did not violate the AWA from December 27, 2008, through January 17, 2009, and on September 30, 2009, when he sold six additional dogs to two parties. Additionally, the JO applied the civil penalties factors differently and found that Petitioner's ongoing pattern of violations during the period in question demonstrated a history of previous violations. *See* 7 U.S.C. § 2149(b). In light of these findings, the JO concluded that the mere $15 penalty applied by the ALJ for each of the dogs sold in violation of the AWA was too insignificant to deter Petitioner and others from committing similar violations in the future. As a result, the JO increased the civil penalty from $15 per violation to $200 per violation, which corresponds with a total increase from $14,430 to $191,200. The JO based this increase on a number of factors, including his significant discretion under the statute, that the AWA authorized a civil penalty up to $3,750 per violation at the time of Petitioner's conduct, and that the Administrator recommended a total civil penalty of at least $1,792,500.

---

[3]This was inconsistent with the ALJ's finding that Petitioner violated the AWA on or about December 27, 2008, and on or about September 30, 2009. The six sales that occurred on those dates were factored into the ALJ's calculation of the civil penalty amount.

Petitioner timely appealed the JO's Decision and Order.

## DISCUSSION

## I. The Judicial Officer Did Not Err by Failing to Determine Willfulness

### A. Standard of Review

This Court's review of an administrative decision such as the one at issue here is highly deferential. Under the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706, this Court reviews an administrative decision to determine whether it was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Volkman v. DEA*, 567 F.3d 215, 219–20 (6th Cir. 2009) (quoting 5 U.S.C. § 706(a)(2)). To make this decision, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Oreg. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). "Although the court's review is to be 'searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'" *Northeast Ohio Reg. Sewer Dist. v. U.S. E.P.A.*, 411 F.3d 726, 732 (6th Cir. 2005) (quoting *Volpe*, 401 U.S. at 416).

This Court reviews the JO's factual findings to determine whether they are supported by substantial evidence. *See Volpe Vito, Inc. v. Dep't of Agric.*, No. 97–3603, 1999 WL 16562, at *1 (6th Cir. Jan. 7, 1999) ("Our review of an administrative decision is narrow; we set aside an agency's action only if it is not supported by substantial evidence."). A reviewing court finds substantial evidence where there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987) (internal quotation marks omitted). "Even if we were to reach a different conclusion from

the agency, the agency's reasonable choice, supported by substantial evidence, may not be overturned." *Turner v. U.S. Dep't of Agric.*, 217 F. App'x 462, 466 (6th Cir. 2007) (internal quotation marks omitted).

In this case, "[b]ecause the judicial officer acts as the final deciding officer in lieu of the Secretary in Department administrative proceedings, we limit our review to his decision." *Pearson v. U.S. Dep't of Agric.*, 411 F. App'x 866, 869–70 (6th Cir. 2011) (internal quotation marks and citation omitted). Even where a JO disagrees with some of the conclusions of an ALJ, this Court applies the same standard of review and "[t]he ALJ's finding [sic] are simply part of the record to be weighed against other evidence supporting the agency." *Turner*, 217 F. App'x at 466 (internal quotation marks omitted).

Petitioner asserts that his case requires *de novo* review, citing the language of 7 U.S.C. § 2149(c) and *Genecco Produce, Inc. v. Sandia Depot, Inc.*, 386 F. Supp. 2d 165 (W.D. N.Y. 2005), as authority for that proposition. Neither the statute nor *Genecco Produce* support Petitioner's argument. First, although § 2149(c) vests courts of appeals with the authority to review the Secretary's orders[4], it does not suggest application of a *de novo* standard of review. Second, the Western District of New York stated that *de novo* review was only required in *Genecco Produce* because the case involved a trial *de novo* in the district court pursuant to 7 U.S.C. § 499g(c), not a "*direct appeal* of a final decision of the Secretary of Agriculture to the . .

---

[4]This section states that

> [a] dealer . . . aggrieved by a final order of the Secretary issued pursuant to this section may . . . seek review of such order in the appropriate United States Court of Appeals . . . and such court shall have exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of the Secretary's order.

7 U.S.C. § 2149(c).

. Court of Appeals," which is the procedural posture in this case. 386 F. Supp. 2d at 171. Therefore, *Genecco Produce* is not analogous to the instant case and *de novo* review would be improper. Instead, this Court reviews the JO's decision for an abuse of discretion and substantial evidence.

### B. Analysis

#### 1. Willfulness Requirement

The ALJ and JO determined that 7 U.S.C. § 2149(b) does not include a willfulness requirement. Therefore, the JO held, the issuance of an order requiring a party to cease and desist activity in violation of the AWA and to pay civil penalties for those violations does not require a willfulness determination.

Petitioner asserts on appeal that because a willfulness requirement is clearly delineated in the complaint filed by APHIS against Petitioner, the ALJ and JO erred by not determining the willfulness of his conduct. Petitioner states, "By the plain language employed throughout its Complaint, APHIS makes a determination of willfulness an integral, rudimentary part of the whole and essentially elevates it to the very purpose of the Complaint." Pet'r's Br. at 13. Petitioner's entire argument that a willfulness determination is required before a civil penalty can be assessed against him is therefore based on the complaint's use of "willful" to describe his actions.

Petitioner's argument fails because the plain language of the statute lacks a willfulness requirement, and Petitioner clearly violated the AWA by conducting business without a license, regardless of willfulness or knowledge.

Three sections of the AWA are at issue in this case. The first defines a dealer as "any person who . . . for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of [] any dog or other animal whether

alive or dead for research, teaching, exhibition, or use as a pet." 7 U.S.C. § 2132(f). Section 2134 states that each dealer must obtain a license before buying or selling any animal in this manner. Therefore, any individual who qualifies as a dealer and fails to obtain a license from the Secretary is in violation of the AWA. Section 2149(b) governs civil penalties and cease and desist orders for violators of the statute.[5] This section states as follows:

> Any dealer, exhibitor, research facility, intermediate handler, carrier, or operator of an auction sale . . . that violates any provision of this chapter, or any rule, regulation, or standard promulgated by the Secretary thereunder, may be assessed a civil penalty by the Secretary of not more than $10,000 for each violation, and the Secretary may also make an order that such person shall cease and desist from continuing such violation. Each violation and each day during which a violation continues shall be a separate offense.

7 U.S.C. § 2149(b) (2013).[6] The plain language of this subsection does not contain a willfulness requirement for the imposition of civil penalties or cease and desist orders, and Petitioner is unable to point to a place in the AWA that includes such a requirement.[7] Although there is no

---

[5]Although this section is titled "Violations by Licensees," the plain language of the section extends its requirements to anyone who violates a part of Chapter 54, which contains the AWA. "[Headings and titles] are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain." *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947). Here, the statutory language very clearly extends these penalties to all violators of requirements in the Chapter. Therefore, the title of this section need not be consulted for meaning.

[6]At the time Petitioner committed the violations, the maximum civil penalty was only $3,750 per violation, so this is the amount used by the JO to calculate an appropriate civil penalty. The statute was subsequently amended to raise the amount per violation to $10,000. 7 C.F.R. § 3.91(b)(2)(ii) (2006).

[7]Section 2149(b) is distinguishable from Section 2149(d), which requires a willfulness or knowledge finding before a criminal penalty may be imposed for violations of the AWA. *See* 7 U.S.C. § 2149(d) ("Any dealer, exhibitor, or operator of an auction sale subject to section 2142 of this title, who knowingly violates any provision of this chapter shall, on conviction thereof, be subject to imprisonment for not more than 1 year."). Similarly, the APA requires a willfulness determination before the suspension of an administrative license can occur. *See Parchman v.*

Sixth Circuit case law directly on point, the Ninth Circuit explicitly held in an unpublished decision that § 2149(b) does not contain a willfulness requirement. *Hickey v. Dep't of Agric.*, 878 F.2d 385, 1989 WL 71462 (9th Cir. June 26, 1989). That court stated that "7 U.S.C. § 2149(b) provides for penalties in the case of any violation, willful or not." *Id*. at *2. Petitioner only finds support for his argument in the complaint filed against him by the Secretary.

Because § 2149(b) does not require an ALJ or JO to make a willfulness determination before imposing civil penalties or a cease and desist order, the JO's failure to make a willfulness determination does not constitute an abuse of discretion.

### 2. Petitioner's Violation of the Statute

Petitioner asserts for the first time in his reply brief that the JO's factual findings were not based on substantial evidence. He appears to assert this argument as an alternative to his argument that a willfulness determination is required.

The JO's factual findings are reviewed by this Court for substantial evidence. A court finds substantial evidence where the JO's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moon*, 836 F.2d at 229 (internal quotation marks omitted). According to Petitioner, the JO's finding that he violated the AWA is based on "mere bits and pieces of information." Pet'r's Reply Br. at 5. He also states, "[T]he JO failed to 'take into account whatever in the record fairly detracts from its weight.'" *Id*. (quoting *Gray v. U.S. Dep't of Agric.*, 39 F.3d 670, 675 (6th Cir. 1994)). It is unclear what Petitioner means by this last sentence because he merely concludes his argument by stating that

---

*U.S. Dep't of Agric.*, 852 F.2d 858, 865 (6th Cir. 1988) (discussing a willfulness requirement when a license is suspended); *Hutto Stockyard, Inc. v. U.S. Dep't of Agric.*, 903 F.2d 299, 304 (4th Cir. 1990) ("[U]nder the APA the suspension of Hutto was not proper unless it willfully violated the Act.").

the JO's findings were not supported by substantial evidence. He fails to point to "whatever in the record fairly detracts from [the] weight" of the evidence considered by the JO.

It is clear from the record that the JO's factual findings regarding Petitioner's dog sales are supported by substantial evidence. The JO based its factual findings on a great deal of evidence, including receipts of sale and records of acquisition obtained from individuals who purchased Petitioner's dogs. Petitioner clearly qualifies as a dealer as that term is defined under the AWA. Section 2132(f) defines a dealer as "any person who, in commerce, for compensation or profit, delivers for transportation, or transports . . . buys, or sells, or negotiates the purchase or sale of, [] any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet." 7 U.S.C. § 2132(f). The extensive record establishes that Petitioner sold over 950 dogs for profit during the period in question. Because Petitioner does not fall under one of the exceptions for retail pet stores or for individuals who "do[] not sell, or negotiate the purchase or sale of any wild animal, dog, or cat, and who derive[] no more than $500 gross income from the sale of other animals during any calendar year," 7 U.S.C. § 2132(f)(i), (ii), he qualifies as a dealer. By operating as a dealer without a license, he violated the terms of the AWA and is subject to civil penalties and/or a cease and desist order.

## II. Petitioner's Argument Regarding Lack of Good Faith and History of Previous Violations

### A. Standard of Review

Where a petitioner challenges the imposition of sanctions by a JO, "'[t]he scope of our review . . . is limited. Only if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter.'" *Gray*, 39 F.3d at 677 (quoting *Stamper v. Sec'y of Agric.*, 722 F.2d 1483, 1489 (9th Cir. 1984)) (internal quotation marks omitted). "The fashioning of an appropriate and reasonable remedy is for the Secretary, not the

court. The court may decide only whether under the pertinent statute and relevant facts, the Secretary made 'an allowable judgment in (his) choice of the remedy.'" *Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S. 182, 188–89 (1973) (quoting *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612 (1946)).

**B.     Analysis**

The AWA provides guidance to the Secretary for calculating an appropriate civil penalty. "The Secretary shall give due consideration to the appropriateness of the penalty with respect to the size of the business of the person involved, the gravity of the violation, the person's good faith, and the history of previous violations." 7 U.S.C. § 2149(b). In addition to these factors, a JO must also give weight to the recommendations of the administrators charged with enforcement of the statute. *See In re: S.S. Farms Linn Cnty., Inc.*, 50 Agric. Dec. 476, 497 (Feb. 8, 1991). "[R]ecommendations of administrative officials charged with the responsibility for achieving the congressional purpose of the [] statute are highly relevant to any sanction to be imposed and are entitled to great weight in view of the experience gained by administrative officials during their day-to-day supervision of the regulated industry." *In re: Jerome Schmidt*, No. 05–0019, 2007 WL 959715, at *24 (Mar. 26, 2007). In the instant case, both the ALJ and the JO considered these factors when determining an appropriate amount for Petitioner's civil penalty.

Here, the JO found that Petitioner operated a large business based on the fact that he sold 956 dogs during a nineteen-month period, and found that the gravity of Petitioner's violations was severe due to the large number of dogs sold without a valid license. The JO also found that Petitioner's actions lacked good faith and that he had a history of previous violations of the Act. Believing a larger civil penalty would be necessary to have the proper deterrent and punitive effect, the JO increased the total amount of the civil penalty from $14,430 to $191,200.

The size of the civil penalty assessed against Petitioner is not unwarranted in law or without justification in fact. The JO's determination that Petitioner's business is large is justified by the record because Petitioner moved a considerable number of dogs through the market in a fairly short period of time. Additionally, the JO's determination of the gravity of Petitioner's offenses is supported in law. The Secretary has issued a number of decisions stating that the failure to obtain an AWA license is a grave violation of the statute. *See, e.g.*, *In re: Mary Bradshaw*, 50 Agric. Dec. 499, 509 (May 17, 1991) ("The licensing requirements of the Act are at the center of the remedial legislation . . . . [C]ontinuing to operate without a license[] with full knowledge of the licensing requirements [] strikes at the heart of the regulatory program."). Although perhaps not all of Petitioner's violations were committed knowingly, each transaction that followed receipt of Goldentyer's letter was done in direct contravention of the licensing requirements. Furthermore, operating without a license, especially after receipt of Goldentyer's letter, constitutes a grave violation that threatens the enforceability of the AWA.

In the instant case, analysis of the final two factors is slightly more complicated. The Secretary often finds a lack of good faith and a history of previous violations of the AWA, as would be expected, where an individual was involved in previous formal disciplinary proceedings yet continues to violate the statute. *See, e.g.*, *In re: Karl Mitchell*, No. 09–0084, 2010 WL 5295429, at *8 (Dec. 21, 2009) ("In light of the previous proceedings against Mr. Mitchell that resulted in the issuance of cease and desist orders, civil penalties, and the revocation of Mr. Mitchell's Animal Welfare Act license, Mr. Mitchell has a history of previous violations and this fact demonstrates an absence of good faith.").[8]  According to the record

---

[8]*See also Lancelot Kollman Ramos v. U.S. Dep't of Agric.*, 68 Agric. Dec. 60, at *8 (Apr. 7, 2009) (a history of previous violations stemmed from the fact that petitioner had previously admitted wrongdoing during another AWA disciplinary proceeding); *In re: Marilyn Shepherd*,

before us, Petitioner has never before been subject to formal disciplinary proceedings for violating the AWA. In fact, according to the record, the only interactions he has had with the Secretary were the letter he received from Goldentyer and his later visit from Mina, the APHIS investigator. Therefore, under this standard, it might be difficult to attribute to Petitioner bad faith and a history of previous violations.

However, bad faith and a history of previous violations can also be found where a petitioner receives notice of his violations yet continues to operate without a license. *See, e.g.*, *In re: William Richardson*, 66 Agric. Dec. 69, 88–89 (June 13, 2007) ("I have consistently held under the Animal Welfare Act that an ongoing pattern of violations over a period of time establishes a violator's 'history of previous violations,' even if the violator has not been previously found to have violated the Animal Welfare Act.").[9] For example, in *In re: Beverly Howser*, 68 Agric. Dec. 1141, 1143 (Oct. 15, 2009), the Secretary found a history of previous violations in the absence of formal complaints or penalties, after the petitioner was informed of the AWA's requirements and continued to operate her business without a license. Her conduct during the period in question established a history of previous violations and a lack of good faith. *Id*. Similarly, in *In re: Sam Mazzola*, 68 Agric. Dec. 822, 827 (Nov. 24, 2009), the petitioner's

---

66 Agric. Dec. 1107, 1116 (Nov. 29, 2007) ("Ms. Shepherd apparently feels free to ignore the prior imposition of civil sanctions and to continue doing business without an Animal Welfare Act license. Refusing to comply with a lawful final order such as that issued by Administrative Law Judge Baker is unacceptable, to say the least.").

[9]Although *In re: William Richardson* dealt with violations of the Commercial Transportation of Equine for Slaughter Act, the JO applied this reasoning from AWA cases. Richardson was fined for violations of the Act between August 26, 2003, and November 23, 2004. 66 Agric. Dec. at 87–90. These violations also served as the ongoing pattern of violations establishing a history of previous violations for purposes of § 2149(b). *Id*. at 89. Similarly, the JO in the instant case found that Petitioner's violations during the time in question, especially those following receipt of Goldentyer's letter, demonstrated a history of previous violations.

choice to disregard a clear warning, even in the absence of prior formal disciplinary proceedings, was sufficient to establish a history of previous violations and a lack of good faith.[10]

In the instant case, while it is clear that each of Petitioner's over 950 sales constitutes a violation of the AWA, it is not clear that each occurred during a time when Petitioner was aware of his noncompliance. The JO found in this case that Petitioner had a history of previous violations based on his continuous pattern of conduct and his disregard for the AWA's requirements during part of the period in question. Although Petitioner may not have been aware of the regulations while perpetrating all of these violations, his pattern of violations, his disregard of Goldentyer's letter, and his continued sale of dogs following receipt of that letter are sufficient under many of the Secretary's decisions to support the JO's finding of a history of previous violations and a lack of good faith. While the history of previous violations and the lack of good faith may not be as severe as the JO indicated, the JO's decision is not unwarranted in law or without justification in fact. It was reasonable for the JO to assume knowledge, lack of good faith, and a history of previous violations once Petitioner received Goldentyer's letter, disregarded its contents, and continued to operate his business by selling dogs in violation of the statute. Petitioner committed over 950 violations of the statute, at times with knowledge or intentional ignorance of its requirements, which warrants application of civil penalties.

---

[10]*See also In re: Jerome Schmidt*, No. 05–0019, 2007 WL 959715, at \*24 (Mar. 26, 2007), in which the JO found a history of previous violations based on "Dr. Schmidt's ongoing pattern of violations over a period of more than 3 years 4 months" and his "disregard for the requirements of the Regulations and Standards"; *In re: Judy Sarson*, 67 Agric. Dec. 419, 426 (Jan. 17, 2008) ("Despite knowing that her AWA license had expired . . . Respondent continued to engage in regulated activity and sold numerous dogs . . . . Such an ongoing pattern of violations demonstrates a lack of good faith and establishes a 'history of previous violations' . . . ."); *In re: Tracey Harrington*, 66 Agric. Dec. 1061, 1071 (Aug. 28, 2007) ("Ms. Harrington's ongoing pattern of violations on May 10, 2004, and February 3, 2005, establishes a history of previous violations for the purposes of section 19(b) of the Animal Welfare Act (7 U.S.C. § 2149(b)) and a lack of good faith.").

Although the penalty in this case is quite hefty, especially when compared with other cases, many of which are cited in Petitioner's briefs, the sanction is within the administrative agency's authority. This Court does not invalidate an administrative sanction simply because "it is more severe than sanctions imposed in other cases." *Butz*, 411 U.S. at 187. *See also Volpe Vito*, 1999 WL 16562, at \*2 (internal quotation marks omitted) ("[T]his court will not consider the severity of a sanction in a particular AWA case relative to sanctions imposed in other cases, provided that the sanction is permitted by the authorizing statute and the departmental regulation, and the statute and regulation themselves are not challenged."); *Garver v. United States*, 846 F.2d 1029, 1030 (6th Cir. 1988) ("This court does not review administrative agency sanctions for reasonableness, or for whether they comport with our ideas of justice."). Instead, this Court defers to the Secretary's employment of a sanction so long as it is not unwarranted in law or without justification in fact, and it is permitted by the authorizing statute and regulation. *Garver*, 846 F.2d at 1030. Here, the AWA allowed a civil penalty up to $3,750 per violation, the Administrator recommended $1,875 per violation, and the JO imposed a civil penalty of $200 per violation. This civil penalty is within the JO's authority and will not be disturbed.

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review and **AFFIRM** the Secretary's Decision and Order.